## ST. LOUIS & S. F. R. CO. v. WILLIAMS.

### No. 1625. Opinion Filed March 12, 1912.

### (122 Pac. 152.)

1. **RAILROADS—Fences—Protection of Public.** Statutes requiring railways to fence their rights of way are passed in pursuance of the police powers of the state, and are for the benefit of the whole public, and are not intended merely for the protection of adjoining landowners, unless it clearly appears from the language used that it was the intention of the Legislature to protect only such owners.

2. **SAME—Private Crossings—Gates.** In the absence of statute or agreement to the contrary, a railroad company must exercise reasonable care to see that the gates or bars at private or farm crossings are kept closed; the duty being included in that of maintaining a sufficient fence of which the gates or bars constitute a part. And. if the gates or bars are properly constructed and are left open by the landowner or by strangers without the knowledge of the company, it will not ordinarily be liable, the company being entitled to a reasonable time to discover that they are open and to close them; but the company will be liable if they have remained open for such length of time that it should in the exercise of reasonable care have discovered their condition.

3. **NEGLIGENCE—Question for Jury.** Where from the facts shown by the evidence, although undisputed, reasonable men might draw

different conclusions respecting the question of negligence, such questions are properly for the jury.

(Syllabus by the Court.)

*Error from Ottawa County Court;*
*W. Y. Quigley, Judge.*

Action by Charles P. Williams against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

*W. F. Evans* and *R. A. Kleinschmidt,* for plaintiff in error.

*S. C. Fullerton,* for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages for injuries inflicted upon certain live stock belonging to the plaintiff by one of the defendant's trains. After the plaintiff rested, the defendant demurred to his evidence, which demurrer was overruled, and, the defendant offering no evidence, the court instructed the jury to "return a verdict in favor of the plaintiff for the sum of $690, together with interest thereon at the rate of six per centum per annum from the 18th day of November, 1908, as prayed for in plaintiff's petition." Upon this instruction the jury rendered its verdict, to reverse which this proceeding in error was commenced.

The grounds for reversal urged by counsel for plaintiff in error in their brief may be stated as follows: (1) The court erred in overruling the defendant's demurrer to plaintiff's evidence. (2) The court erred in refusing to give certain instructions requested by the defendant. (3) The court erred in instructing the jury to return a verdict in favor of the plaintiff. We think the evidence adduced by the plaintiff was sufficient to take the case to the jury. Section 1389, Comp. Laws 1909, provides that:

"It shall be the duty of every person or corporation owning or operating any railroad in the state of Oklahoma to fence its road, except at public highways and station grounds, with a good and lawful fence."

The next section defines a lawful fence; and section 1392 provides that:

"Whenever any railroad corporation or the lessee, person, company or corporation operating any railroad, shall neglect to build and maintain such fence, as provided in this act, such railroad corporation, lessee, person, company or corporation operating the same, shall be liable for all animals killed by reason of the failure to construct such fence."

The petition alleged that the defendant neglected to maintain and keep in repair and keep closed a certain gate, and that it permitted said gate to remain out of repair and remain open, and that the stock strayed upon the railroad right of way through said open gate in the railway company's fence on the Eliza Gibson farm, which gate had been open from the spring of 1908 until after the stock were killed in November of that year; that the gate posts were just common posts braced with 4x4 pine pieces, and this brace had burned off and the post burned off and the post leaned away over back, and that the gate could not be shut; that the section foreman and the sectionmen of the railroad company passed right by this open gate about every day during all the time it was open and out of repair. George Gibson, owner of the land, testified that the gate had been open since the spring preceding the accident; that during the winter it had been closed, but in the spring when they went to working in the field it was left open, because they had a private gate up next to the house, that they kept closed, and after the stock was out of the field that gate in the field was left open, because there was not anything in there. The tenant of the owner testified:

"This gate had been left open by me. because the gate was not in very good condition and was hard to handle. The lower hinge was off."

The contentions of counsel in relation to the questions of law arising out of the foregoing facts may be best illustrated by the instructions which were requested by them and refused by the court. They are as follows:

"(2) A railroad company owes no duty to keep in repair its fence along the right of way, or its gates through such fence, to any other than the adjoining landowner or his lessees, and if the stock of others should stray upon such adjoining land and thence

upon the track of the railroad through an open gate and be killed, such other persons could not recover therefor by reason of the company's failure to keep the fence in repair or the gate closed.

"(3)   If you believe the plaintiff's stock entered the Gibson farm without right, but as a trespass, and strayed upon defendant's track therefrom through an open gate and was killed, your verdict should be for the defendant.

"(4)   It was the duty of the tenant in possession of the Gibson farm when passing through the gate crossing the railroad to close such gate, and if his stock should wander upon the track after he had left such gate open and be killed, without negligence of the persons operating the train, he could not recover therefor, and the railroad company owes no greater duty to the owner of stock trespassing upon such adjoining farm than to the tenant thereof.

"(5)   If you find that the gate to the railroad fence was left open by the tenant in possession of the Gibson farm, and that the plaintiff's stock entered through such farm and open gate upon the railroad track and were killed by a train, the plaintiff cannot recover, and your verdict should be for the defendant."

We think these instructions were properly refused. Statutes requiring railways to fence their rights of way are passed in pursuance of the police powers of the state, and are for the benefit of the whole public, and are not intended merely for the protection of adjoining landowners, unless it clearly appears from the language used that it was the intention of the Legislature to protect only such owners. We think Mr. Elliott, in his work on Railroads (vol. 3, sec. 1190), states the rule correctly, as follows:

"Statutes requiring railway companies to erect and maintain fences along their rights of way rest, as we have heretofore seen, upon the police power of the state. The exercise of the police power of the state by the enactment of police regulations is for the benefit of the whole public as a general rule. And, since statutes imposing the duty to fence upon railway companies rest upon the police power, it follows that they are for the benefit of the general public, and to this effect is the almost unanimous weight of judicial authority. Such statutes are not intended merely for the protection of adjoining landowners unless it clearly and unmistakably appears from the language used that it was the intention of the Legislature to protect only such owners. Where the animals are unlawfully on the adjoining premises from which

they escape to the company's track, there is some conflict in the authorities as to whether or not the company is liable to the owner of such animals. The weight of authority is to the effect that the company may be liable in such cases, and this we believe to be the correct rule, although there are some authorities which hold that the company is not liable."

We know of no statute, and none has been called to our attention, providing for private gates in railway fences, but whether there is such a statute is immaterial. In either event it ·still would be the duty of the railway company to exercise reasonable care and diligence to keep such gates closed. In *Mobile & O. R. Co. v. Tiernan*, 102 Tenn. 704, 52 S. W. 179, it was said:

"Again, the jury was rightly charged, in substance, that if a third person left one of the gates open, and the mare and colt entered through it while so·open, the company would be responsible if it knew, or by the exercise of ordinary care could have known, that the gate was open, and that it would not be responsible, if it did not have or by the exercise of ordinary care could not have had, such knowledge. This instruction is entirely correct, and is fair to both sides. The mere erection of an inclosure, sufficient in the first instance, did not afford the company perpetual immunity; but, to continue its protection against liability, the company was bound to exercise ordinary care to keep the inclosure in good ·repair and closed at all points—the gates, as well as other parts of the fence."

In 33 Cyc. 1209, the rule is stated as follows:

"In the absence of statute or agreement to the contrary, a railroad company must ordinarily exercise reasonable care to see that the gates or bars at private or farm crossings are kept closed, the duty being included in that of maintaining a sufficient fence of which the gates or bars constitute a part; * * * and, if the gates or bars are properly constructed and are left open by the landowner or by strangers without the knowledge of the company, it will not ordinarily be liable, the company being entitled to a reasonable time to discover that they are open and to close them; but the company will be liable if they have remained open for such length of time that it should in the exercise of reasonable care have discovered their condition."

On the same subject is the following from 33 Cyc. 1207:

"As affecting the duties and liabilities of railroad companies with regard to fencing, the gates or bars at private or farm crossings constitute a part of the fence, and must be sufficient to serve

the purposes of such fence as they are required to construct and maintain. * * * It is also the duty of the railroad company to exercise reasonable care and diligence to keep the gates or bars in repair, whether the duty of constructing them is imposed upon the company by statute or agreement, or whether bound to construct farm crossings or not; and, while it will not ordinarily be liable for failing to repair defects of which it has no knowledge, it will be liable where the defects have existed for such a length of time that it should by reasonable care and diligence have been discovered."

The foregoing authorities correctly state the law applicable to the question now under consideration.

We think, however, it was error for the court to instruct the jury to return a verdict in favor of the plaintiff. Under our view of the law, there were several questions that ought to have been submitted to the jury, the most important perhaps being whether the gate remained open such a length of time under the circumstances as to charge the defendant with notice of its condition and with the duty of closing it. To our mind there was evidence reasonably tending to show that it did, but we have no way of telling what the jury would have found on that question if it had been submitted to them. It is rather an unusual thing for a railroad company to insist on its right to have its case submitted to a jury to determine the facts untrammeled by directions from the court, but it, in common with every other litigant, has that right, and, unless it waives it, it must not be deprived of it, or hindered in its full exercise. C. O. & G. R. Co. v. Deperade, 12 Okla. 367, 71 Pac. 629; Sans Bois Coal Co. v. Janeway, 22 Okla. 425, 99 Pac. 153. In the latter case, which has been many times followed by this court, it was held:

"Where, from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence or contributory negligence, such questions are properly for the jury."

The judgment of the court below is reversed and remanded, with instructions to proceed further in conformity with this opinion.

TURNER, C. J., and HAYES and DUNN, JJ., concur; WILLIAMS, J., absent, and not participating.