## MISSOURI, K. & T. RY. CO. v. SAVAGE.

No. 1619.    Opinion Filed March 19, 1912.

(122 Pac. 656.)

1. **EVIDENCE — Judicial Notice — Stock Laws — Burden of Proof.**
This court does not take judicial notice of an order of the county commissioners, exempting a county, or a subdivision thereof, from the operation of the general law prohibiting animals from running at large. Where such exemption prevails, it is the duty of the party relying upon such fact to allege and prove same, in order to be relieved of the effect of the general statute.

2. **RAILROADS—Operation — Injuries to Animals — Care Required.**
Where the law prohibits cattle from running at large, and a cow, being at large, strays upon the track of a railway company at a place it is not required to fence its track, and is killed by the train, the employees of the company are not required at such place to keep a lookout for stock, but are required to use ordinary care not to injure such animal after its presence on the track and its danger have been discovered.

(Syllabus by Brewer, C.)

*Error from Atoka County Court;*
*J. H. Linebaugh, Judge.*

Action by R. C. Savage against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Clifford L. Jackson, W. R. Allen, M. D. Green,* and *J. G. Ralls,* for plaintiff in error.

*J. W. Clark and M. C. Haile,* for defendant in error.

Opinion by BREWER, C. This is a suit for damages for killing a cow. It was filed and tried in a justice of the peace court, where plaintiff prevailed. On appeal to the county court of Atoka county, it was tried *de novo,* November 1, 1909, plaintiff again prevailing. The defendant, as plaintiff in error, brings this appeal. To determine the status of this case and the law applicable, it is first necessary to dispose of a preliminary question.

Atoka county was formerly a part of Indian Territory, and prior to statehood such territory was without any law restraining the running at large of domestic animals. In other words, it was a "Free Range" country. Under that condition, a certain line of judicial decisions relative to the duty of a railroad, with reference to animals straying on its tracks, was announced. Since the advent of statehood in those portions of the state where the Herd Law is in force a different rule regarding the duty of a railroad with reference to such animals obtains. The following sections of Comp. Laws 1909 are in force in this state:

"Section 155. Every owner of swine, sheep, goats, stallions, or jacks, shall restrain them at all times and seasons of the year, from running at large, in the state of Oklahoma."

"Section 156. All domestic animals other than those mentioned in section one (155) hereof, shall be, by the owner thereof, restrained from running at large in said state, unless permitted to run at large as hereafter provided in this act."

Under the provisions of section 193, Comp. Laws 1909, the county commissioners of counties in those portions of the state where stock were not restrained prior to the adoption of the Constitution have the right to exempt certain classes of domestic animals from the operation of sections 155, 156, *supra,* where certain proceedings and formalities therein mentioned have been complied with. In this case the record is silent as to whether that portion of Atoka county wherein the animal sued for was killed had been exempted from the operation of the statute.

The first material question to be determined is, Will this court take judicial notice of the counties, or subdivision of counties, exempted by order of the county commissioners from the operation of the general law? This question was before this court in *St. L. & S. F. Ry. Co. v. Brown, post,* 122 Pac. 136, wherein it is said:

"It is not shown by the record that either Marshall county or that part thereof wherein the accident occurred had been released from the operation of this statute at the time of the killing of the cow of defendant in error, and we cannot indulge the presumption that it was, but, on the other hand, must conclude that this law was in force in Marshall county."

In the Brown case, *supra,* the question was not urged in the briefs, but, being a necessary preliminary point to be decided, it was passed upon without the citation of authorities. It is urged in this case, and we have given the matter considerable investigation, but find no sufficient reason to depart from the holding in that case, but feel justified in noticing some of the authorities supporting the conclusion therein reached.

It is said in 1 Chamberlayne on Evidence, sec. 619 :

"In general, statutes allowing certain governmental agencies, counties, cities or the like to adopt laws relating to given subjects at their option are themselves public statutes; but whether the necessary action *in pais* has in fact been taken in a given case must usually be established by evidence."

And further (section 621) :

"Considerable difficulty has been apparently experienced by the courts in drawing a satisfactory line of division between the primary and the secondary results of legislation involved in a matter where an act *in pais,* the action of the qualified voters of a given district, intervenes, to establish in a particular locality the prohibitions provided by the general law. The 'local option law,' as passed by the Legislature, is undoubtedly a public one. All courts, therefore, judicially know it. But tribunals in certain states have been unable to see their way clear to taking judicial notice that the general law had, by popular action, been made operative in a certain section of the state. In view of the fact that the application of the general law to the *locus* of the offense is a constituent fact or one of the *res gestae,* it would seem that such an administrative course was sound in point of principle. For similar reasons, popular action regarding an option conferred by a general law—*e. g.,* that of using the contract system of building, repairing, or maintaining highways—will not be made the subject of judicial notice."

In discussing the question of judicial notice Mr. Wigmore, in his work on Evidence (vol. 4, sec. 2572), says :

"The ordinances and regulation of local boards and councils are not noticed"

—citing *Moore v. Mayor,* 107 Ga. 704, 33 S. E. 435; *Watt v. Jones,* 60 Kan. 201, 56 Pac. 16.

This rule was followed by this court in *Cunningham v. Ponca City,* 27 Okla. 858, 113 Pac. 919. A case which seems

directly in point was decided by the Supreme Court of Indiana. *Lyons v. Terre Haute & Ind. R. Co.*, 101 Ind. 419. In that case the court declined to take judicial knowledge that the board of commissioners had made an order allowing stock to run at large, and on the point say:

"Where there is no evidence from which it can be inferred that there was an order of the board of commissioners allowing stock to run at large, the court may as a matter of law conclusively infer negligence."

Under the general statute permitting local option to be put in force in certain localities, upon a compliance by the locality with the provisions of the general statute, the courts do not judicially know when or where local option is in effect. *Craddick v. State* (Tex.) 88 S. W. 347; *Gue v. City of Eugune,* 53 Ore. 282, 100 Pac. 254.

In *State v. Burkett,* 83 Miss. 301, 35 South. 689, it is said:

"The court cannot take judicial notice that the general law for working public roads by contract has been put in operation in a certain county by vote."

Adhering to the rule announced in the Brown case, *supra,* that this court does not judicially know what counties or subdivisions thereof, in old Indian Territory, may have been exempted from the operation of the Herd Law, we must treat this as a case where the animal was unlawfully running at large; it being admitted by the owner that she was at large with his knowledge and under his authority. Under these circumstances, the rule announced by the courts of Indian Territory, and followed by this court in cases arising in Indian Territory, prior to statehood, does not apply. The correct rule, defining the duty of the railroad, to be applied to this case, is announced in the case of *A., T. & S. F. Ry. Co. v. Davis & Young,* 26 Okla. 359, 109 Pac. 551, and followed in *A., T. & S. F. Ry. Co. v. Ward, ante,* 120 Pac. 982, and in *St. L. & S. F. R. Co. v. Brown, supra.* In the Davis & Young case, *supra,* Mr. Justice Williams says:

"The plaintiffs' mules having trespassed upon the railroad track of defendant without any actual fault on the part of said

plaintiffs, after the presence and peril of the mules were known to it, the obligation rested upon it to exercise ordinary care in the management of its train to prevent injury to such mules."

In the Brown case, *supra*, the duty was defined thus:

"In such cases the duty of defendant's employees is to exercise ordinary care to avoid injuring the animals after their peril is discovered."

And in the Ward case, *supra,* thus:

"It is error to instruct that it is the duty of employees in charge of the train to exercise reasonable care to discover animals on the track. In such cases the duty of defendant's employees is to exercise ordinary care to avoid injuring the animals after they are discovered."

In this case all the evidence shows that the animal was killed by the north-bound "Katy Flyer," one of the defendant's fast passenger trains; that the animal strayed upon the right of way, and onto the tracks within the station limits at Caney, where, under the law, the company was not required to fence its tracks. The only witness to the injury introduced by plaintiff stated: "When she (the cow) first came on the track, the train was about 50 feet from her." And on cross-examination said: "The cow was going across the track when the train struck her."

The engineer in charge of the train testified:

"I was going north on train No. 6. The animal came on the track when I was within 40 feet of her. * * * I was running 25 or 30 miles an hour. The train was a heavy passenger train with about 10 coaches. * * * At the rate we were going, it would require about 3,000 feet to stop the train. * * * I did not do anything, nor did I have time to do anything to scare the cow. I hit her almost as soon as I saw her. * * * I did not have time to do anything. It was impossible. If my mother had been lying there, I would have hit her the same as I did the cow."

The court instructed the jury, in effect, that it was the defendant's duty to keep a lookout for stock on its tracks. A portion of instruction No. 5 illustrates:

"If you find from the evidence in this case that it was impossible at the time the engineer in charge of said train saw said

animal, or could have seen said animal, for him at that time to have slowed down or stopped, etc., the defendant would not be liable," etc.

This instruction laid the duty on the railroad to keep a constant and vigilant lookout for stock. The jury were told, in effect, that it could not be relieved of liability unless it was impossible to stop the train after the animal could have been seen. This was error. As has been seen under the rule applicable to this case, the defendant owed no duty in regard to this animal until its presence and peril was discovered. The cause should, for the reasons stated, be reversed, and, as it may be possible to prove the exemption from the Herd Law at the time of the killing, should be remanded for further proceedings.

By the Court: It is so ordered.