## BIG JACK MINING CO. v. PARKINSON.

No. 3195. Opinion Filed December 20, 1913.

(137 Pac. 678.)

1. **MASTER AND SERVANT—Mine Employees—Duty of Operators.** Sections 3983 and 3984, Rev. Laws 1910, prescribing certain duties of mine operators towards employees, including the duty of daily inspection, applies to the operators of lead and zinc as well as coal mines.

2. **DEATH—Right of Action—Parties.** An action for damages for wrongful death of the husband may be maintained by the surviving wife for the benefit of herself and minor children, under section 5281, Rev. Laws 1910, where there has been no administration on the estate of the deceased.

3. **SAME—Measure of Damages.** In such action the measure of damages is the pecuniary loss suffered by the widow and minor children by reason of being deprived of the care, protection, and support of the deceased, to be determined by the age, physical condition, occupation, earning capacity, habits, and the use made by the deceased of his earnings.

4. **APPEAL AND ERROR—Harmless Error—Instructions.** "Whether, in a given case, there should be a reversal for error in giving an instruction depends quite as much upon the evidence before the jury to which the instruction might be applied as upon the abstract accuracy of the language of the instruction, and so, if it is apparent that the language of the instruction, though inaccurate, yet, when applied to the evidence before the

jury, it could not have misled the jury to believe their duty was different from what it actually was, the inaccuracy can afford no reason for reversal.''

(Syllabus by Galbraith, C.)

*Error from District Court, Ottawa County;*
*Preston C. Davis, Judge.*

Action by Ella Parkinson against the Big Jack Mining Company, a corporation. Judgment for plaintiff, and defendant brings error. Affirmed.

*Vern E. Thompson, G. W. Earnshaw,* and *F. D. Fulkerson,* for plaintiff in error.

*W. H. Kornegay,* for defendant in error.

Opinion by GALBRAITH, C. This is an action commenced in the district court of Ottawa county, by the widow, for damages for the wrongful death of the husband, resulting in deprivation of protection, care, and means of support. The petition charges, in brief, that on the 6th day of July, 1910, the Big Jack Mining Company was operating a lead and zinc mine in Lincolnville, in Ottawa county, Okla.; that for some months prior to the 1st day of July, 1910, the mine had been shut down, and had become filled with water, and that the water was pumped out the latter part of June, and the active operation of the mine commenced about the 1st of July, 1910; that Andrew F. Parkinson was employed as a miner to work in said mine; that there was a drift in the mine some 250 feet in length, and at one time this drift had been timbered, but the company had carelessly and negligently allowed the timbers that formerly protected persons from loose rocks in the roof thereof to fall down, and that the defendant failed to replace these props, or to furnish timbers to make them; that said roof was some 20 feet from the bottom of the drift, and, on account of the height thereof, and the means of inspection afforded by the defendant, a person working in the drift could not inspect the condition of the roof, and ascertain the dangers from loose or hanging rock therein; that while the mine was idle it filled with water, and the roof in the drift became brittle, and the rocks therein liable to fall; that the com-

pany placed Andrew F. Parkinson at work in said drift, knowing its dangerous condition, and without proper inspection, and that on the 6th day of July, 1910, while the said Parkinson was engaged in his regular work in said mine, and passing along said drift, with a can of dirt, conveying it toward the shaft, a large rock in the roof of said drift gave way and fell upon said Parkinson, crushing, mutilating, and mortally injuring him, from which injuries he, a short time thereafter, died; that he was ignorant of the dangerous condition of said drift, and had no means by which he could ascertain its dangerous condition, and was relying upon the defendant to furnish him a safe place to work; that the defendant not only negligently failed to inspect the said drift and the roof thereof, as required by the statute to do, but knowingly placed the deceased to work therein without taking any care or precaution to ascertain that it was a safe place in which to work; that the deceased was at the time of his death a resident of Ottawa county, Okla., and was a vigorous young man, 26 years of age, capable of doing all kinds of manual labor, and was earning the sum of $75 per month, which he used in the support and maintenance of the plaintiff and her minor children; that the plaintiff is the surviving widow of Andrew F. Parkinson, deceased; and that there had been no administration on his estate, and the plaintiff prosecutes this action for damages for the benefit of herself and her three minor children.

The answer of the defendant was, first, a general denial, and, second, alleged that the defendant exercised due care and diligence in warning the deceased of the hazards incident to his employment; that when he was employed he represented himself to be, and the defendant believed him to be, a capable miner of many years' experience in underground work in lead and zinc mines; that when he was employed he undertook the duty of trimming and sounding the roof and walls of the drift in which he was working, and to keep the same in a safe condition; and that a short time prior to the accident the deceased did inspect and examine the roof and walls of said drift, and declared the same to be in a safe condition, and that thereafter he continued to work, and was constantly warned to examine the roof and walls

of the drift and to keep the same free from dangerous rocks, and requested to report the condition to the ground boss or superintendent—and specially denied that the accident was due to the mine having been filled with water or the removal of the timber, and alleged that the defendant furnished him with every safeguard and convenience for the pursuit of the work assigned him, and that the injury was not caused by the negligence of this defendant or its servants, but was due to his own negligence and fault, and was a risk incident to the work which he assumed by his employment. The new matter alleged in the answer was specially denied by way of reply.

On the issues thus formed, the cause was tried to the court and jury and a verdict returned for the plaintiff in the sum of $10,000. A motion for new trial was denied. Judgment was entered upon the verdict. An appeal to this court has been duly perfected.

Errors are assigned, first, in overruling the motion for new trial; second, that the verdict is not sustained by. the evidence, and is contrary to law; third, that the verdict is excessive; fourth, in the giving of instructions Nos. 4, 5, 6, 7, 8, 9, 10, 16, and 17; and, fifth, refusing to give instruction No. 1, requested by the plaintiff in error.

While these are the assignments made in the petition in error, counsel for the plaintiff in error confine their argument and discussion in the brief entirely to the instructions excepted to and given by the court. Under the rules of this court, we are only called upon in passing upon the case to consider the errors argued in the brief.

In instruction No. 4, complained of, the court directed the jury as to the law of contributory negligence and assumption of risk, and in so doing practically adopts the language of the statute on this subject. This practice is not objectionable, and it does not appear that the court was called upon to improve or enlarge. upon the language used by the Legislature in the statutes in stating the law on these propositions.

Again, complaint is made of instruction No. 5, which reads as follows:

"Under the laws of this state applicable to the case at bar, it was the duty of the defendant to provide a mine foreman, and it was the duty of said mine foreman or his assistant to visit and examine every working place in the mine where the deceased, in the performance of his duty, was required to go, at least once every day, and it was the duty of said foreman or his assistant to direct that each and every place where the deceased, in the performance of his duty, was required to work should be properly secured by props of timbers, and it was further the duty of such mine foreman or his assistant to direct that the deceased be not permitted to work in an unsafe place except for the purpose of making the place safe, and, if you find from the evidence that as a result of the failure to make this daily inspection the injury occurred, the defendant is liable therefor, unless you should find that the deceased was guilty of negligence which caused the injury."

It was evidently the intention of the court in giving the above instruction to advise the jury of the duty which the defendant owed the deceased, as prescribed by sections 3983 and 3984, Rev. Laws 1910. This is conceded by the plaintiff in error; but it is contended that these sections of the statute apply only to operators of coal mines, and have no application to persons operating lead and zinc mines, and for that reason the instruction should not have been given. We cannot agree with the labored argument of counsel that these sections of the statute were intended by the Legislature to protect only workers in coal mines. That such was not the intention of the Legislature seems evident from even a casual examination of the statute. These sections are found in chapter 47, Rev. Laws 1910, being a part of article 3 thereof. This chapter is entitled "Mines and Mining." Article 1 of said chapter creates a State Mining Board, and provides for mine inspectors and divides the state into three mining districts, in one of which every county of the state is included; Ottawa county, where the injury involved in this case occurred, being included in the Third mining district thus created. Then we find in section 3958 the language, "any coal or other mine," and in section 3961, "any coal or other mine;" in section 3977, "coal or other mineral;" section 4008, "every coal or other mine;" section 4009, "every coal or other mine." We do not

believe that the Legislature intended to provide with such minute care for the protection of workers in coal mines, and to leave similar workers in lead and zinc mines without any protection whatever, particularly when these statutes bear such conclusive evidence that they were intended by the Legislature to protect the laborer not only in coal mines but in every other mine that may be operated within the state. We are constrained to hold that the trial court correctly interpreted the meaning, purpose, and intent of the Legislature in enacting these statutes, and in holding that the duty imposed on the operator of a mine thereby was a duty that the plaintiff in error owed to the deceased in this instance. While the statement of the latter part of the instruction in regard to the negligence of the deceased contributing to the injury may be objectionable as a general statement of the rule of contributory negligence, still, under the evidence in this case, the plaintiff in error could not have been injured by such careless statement, since practically all of the evidence showed that Parkinson was not negligent, and that his death was due primarily to the negligence and carelessness of the plaintiff in error and its foreman. The evidence of the foreman himself, whose duty it was, under the statute, to inspect the mine daily, testified that the last time he had inspected this shaft was some two weeks before the accident resulting in the death of Parkinson. The evidence not only showed this carelessness and negligence on the part of the mine foreman, but it further showed that he put men to work in this mine immediately after the water was pumped out of the shaft, which was located on the 90-foot level, before the shaft was dry, and when he knew that the shaft was not in a safe condition, by reason of the mine having recently been filled with water, and standing in that condition for months prior to that time; that some of the timbers and props fell, and they were not replaced, but were simply thrown to one side of the shaft, and the work of mining proceeded. And it also appeared that there had been blasting in the mine the night preceding the day on which Parkinson was killed, and that the place where the stone fell from the roof of the shaft upon Parkinson was only some ten or fifteen feet from where the shaft passed through

dirt into shale rock, and through this shale formation were layers of soapstone, certainly a very unsubstantial character of formation to leave without props or support.   The evidence of the defendant alone would have supported a verdict for the plaintiff on account of defendant's negligence.

Again, complaint is made of the giving of instruction No. 7, which was on the burden of proof, and instructed the jury that while, under the law, the burden of proof was upon the plaintiff to prove her cause of action by a preponderance of the evidence, yet, if they should find from the evidence that the same preponderated in the plaintiff's favor but slightly, that would be sufficient to warrant them to find the issues in her favor. The language of this instruction is possibly not fortunate, and the instruction might be misleading in the form given, yet, under the evidence as disclosed by the record, it is clear that the plaintiff in error could not possibly have been prejudiced by it, for the reason that the evidence of the company's negligence was so clear that this instruction as to a slight preponderance was entirely uncalled for, and the error in giving it was not prejudicial, and therefore not cause for reversal.

Again, complaint is made of the giving of instruction No. 8, in which it is urged that this instruction singled out one duty of the plaintiff in error, and impressed it upon the minds of the jury.   It may be said that the court was not called upon to include all of the duties imposed upon the defendant in one instruction, and it does not seem objectionable that only one of its duties was embraced in this instruction.

Complaint is made of instruction No. 9, which advised the jury as to the law making it the duty of the plaintiff in error to provide a reasonably safe place for the deceased to work.   In a carefully prepared opinion by Harrison, C., the law of this question is set out as follows:

"In 20 Am. & Eng. Enc. of Law (2d Ed.) 55, we find the following text supported by more than 200 decisions from 37 different states, and from the United States Supreme Court, and the courts of Canada and England, viz.: 'In accordance with the rule that reasonable care must be taken to protect one's servants from injury, masters owe to their servants the duty of

providing them with a reasonably safe place in which to work, and of maintaining it in a reasonably safe condition during the employment, having regard to the character of services required, and the dangers that a reasonably prudent man would apprehend under the circumstances of each particular case. This is a positive duty which the master owes, and it is not one of the perils or risks assumed by a servant in his contract of employment and the servant is entitled to rely upon the assumption that the master has performed the duty imposed on him by law of providing a reasonably safe place to work.' In 26 Cyc. 1097, the following rule is stated: 'It is the positive duty of a master to furnish his servant with reasonably safe instrumentalities wherewith, and place wherein, to do his work, and, in the performance of these obligations imposed by law, it is essential that regard should be had, not only to the character of the work to be performed, but also to the ordinary hazards of the employment; and the servant may assume that the master has performed his duty.' This rule is supported by decisions from 43 states, and from the United States Supreme Court, and the courts of England and Canada. Our own court, in the case of *McCabe & Steen Construction Co. v. Wilson,* 17 Okla. 355, 87 Pac. 320, uses the two terms interchangeably, or treats the terms as having the same legal effect. In the course of the opinion, the court quotes from *Ruemmeli-Braun Co. v. Cahill,* 14 Okla. 422, 79 Pac. 260, as follows: 'It is the positive duty of the master to use reasonable care in providing safe tools, machinery, and appliances to work with, and a safe place to work in, safe material to work on.' And after quoting the above language, the court says: 'As above stated, it is now the fundamental and well-settled law of the land that it is the duty of the master to furnish the servant safe tools, materials, and structures to work with and upon, and to keep them in proper repair.' " (*Frederick Cotton Oil & Mfg. Co. v. Trover,* 36 Okla. 723, 724, 129 Pac. 747, 749.)

This instruction is a fair statement of the law and the duty imposed upon the master thereby.

Complaint is also made of instruction No. 10, by which the jury were advised that the defendant relied upon the defense of contributory negligence, that this was an affirmative defense, and the law required them to establish it by a preponderance of the evidence, and, in the absence of such evidence, the law presumed that the deceased acted with due care. This instruction

fairly states the rule as announced by this court in *St. L. & S. F. Co. v. Rushing,* 31 Okla. 231, 120 Pac. 973, where it is announced that:

"The servant is not charged with the duty of inspection. He is entitled to rely upon the assumption that the master has performed his duty."

See, also, *Frederick Cotton Oil & Mfg. Co. v. Trover, supra.*

Again, complaint is made of instruction No. 16, which reads as follows:

"The measure of damages in this case, in the event you find the defendant to be liable, is the pecuniary loss suffered by the plaintiff and the minor children by reason of the loss of the deceased. You cannot allow for grief or anguish of mind arising from the death of the deceased; but you may take into consideration the position the deceased occupied, and the support and protection that he would have afforded to the plaintiff and her minor children had he lived, and, in arriving at this, you will take into consideration his earning capacity, physical condition, his habits, and all the surrounding circumstances as you find them to be from the evidence."

The petition alleged the wrongful death of the husband by the negligence of the defendant, and that there had been no administration on his estate, and that he was a resident of Ottawa county, Okla., at the time of his death, and that the plaintiff was his surviving widow, and also set out the names of his minor children, clearly bringing the right of the plaintiff to maintain the action within the provisions of section 5281, Rev. Laws 1910, and it will be observed that this section provides, "the damages must inure to the exclusive benefit of the widow and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." It appears that the action was rightfully brought by the widow, and that the measure of damages was correctly stated in the above instruction, under the rule announced in the following authorities: *Oklahoma Gas & Electric Co. v. Lukert,* 16 Okla. 397, 84 Pac. 1076; *Western Union Tel. Co. v. McGill,* 57 Fed. 699, 6 C. C. A. 521, 21 L. R. A. 818; *Bartlett v. Chicago, R. I. & P. Ry. Co.,* 21 Okla. 415, 96 Pac. 468.

Lastly, complaint is made of the giving of instruction No. 17, which advised the jury that it was not the duty of the deceased to inspect the roof of the drift in which he was employed; that he had a right to rely upon the presumption that the defendant had performed its duty as to inspection, since the sections of the statute herein referred to make it the duty of the operator to inspect the mine daily, and the provisions of section 4014, Rev. Laws 1910, make it a misdemeanor to fail to perform this duty, and provide that the mine operator shall be liable in a civil action for any damages resulting from the failure to perform this duty. It would seem that this instruction was not misleading nor a misstatement of the law. *St. Louis & S. F. R. Co. v. Rushing,* 31 Okla. 231, 120 Pac. 973.

In the case at bar the court gave 25 instructions, and evidently made an earnest effort to cover every feature of the case, and, while this duty may have been performed with more elaboration than is necessary, and some of the instructions may be open to just criticism, still, considered as a whole, taking those excepted to by the plaintiff in error as well as those not excepted to, it seems that the law of the case arising under the issues presented by the pleadings and the evidence admitted at the trial was fairly stated to the jury. We do not find that the verdict of the jury in this case should be set aside, and a new trial ordered, although some of the instructions of the court were not model statements of the law. Mr. Justice Schofield, in the case of *Bressler v. People,* 117 Ill. 422, 8 N. E. 62, quoted with approval by the Supreme Court of Oklahoma Territory in *Hodge v. Territory,* 12 Okla. 115, 69 Pac. 1077, 1079, said:

"It has often been said by this court—and its correctness is obvious although it might never have been said—that whether, in a given case, there should be a reversal for error in giving an instruction depends quite as much upon the evidence before the jury to which the instruction might be applied as upon the abstract accuracy of the language of the instruction, and so, if it is apparent that the language of the instruction, though inaccurate, yet, when applied to the evidence before the jury, it could not have misled the jury to believe their duty was different from what it actually was, the inaccuracy can afford no reason for reversal."

So we find in this case that the evidence shows such careless and negligent failure to perform the duty of inspection by the plaintiff in error, when the inspection might have, and probably would have, avoided the accident resulting in the death of the deceased, and its liability is so clear, that, although some of the instructions which the court gave to the jury may have been inaccurate statements as abstract propositions of law, yet, when applied to the evidence before the jury, these could not have misled the jury to believe its duty was different from what it actually was, and we therefore find that the judgment appealed from ought to be affirmed.

By the Court:   It is so ordered.