## ST. LOUIS, I. M. & S. RY. CO. v. DAWSON.

No. 7622. Opinion Filed May 9, 1916.

(157 Pac. 751.)

RAILROADS—Operation—Injuries to Animals—Failure to Maintain Fence. "It is the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a lawful fence along its right of way, 'except at public highways and station grounds.' Sections 1435 and 1438, Rev. Laws 1910. Where the stock goes upon the right of way and is injured on account of the failure of the company to maintain such lawful fence, it is liable for stock killed or injured by its trains, regardless of negligence in the running or management thereof." **C., R. I. & P. Ry. Co. v. Westheimer & Daube,** 44 Okla. 287, 144 Pac. 356.

(Syllabus by Bleakmore, C.)

*Error from District Court, Nowata County;*
*W. J. Campbell, Judge.*

Action by Marion Dawson against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Thomas B. Pryor* and *W. L. Curtis,* for plaintiff in error.

*John Bruce Cox,* for defendant in error.

Opinion by BLEAKMORE, C. This action was commenced in the court below by Marion Dawson, as plaintiff, against the St. Louis, Iron Mountain & Southern Railway Company, as defendant, for damages occasioned by the killing of live stock. It is alleged in the petition that on January 8, 1914, plaintiff was the owner of five head of steers, weighing about 1,100 pounds each, confined in an inclosed pasture adjacent to the defendant's right of way, the fence forming one side of such inclosure, not at any

public highway or station ground, being erected by defendant; that for some time defendant had failed and neglected to comply with the provisions of the statute requiring it to maintain the same as a lawful fence, by reason of which said cattle were permitted to go upon the track of defendant, where they were struck and killed by its train; and that after said cattle had gone upon said track they were killed through the negligent operation of its train. Defendant answered by general denial, and further alleged that the killing of said cattle was the direct result of the negligence of plaintiff in failing to properly restrain them, etc. Upon trial to a jury there was verdict and judgment for plaintiff in the sum of $365.

Defendant assigns as error: (1) That the verdict and judgment are contrary to the law and the evidence; and (2) the action of the court in permitting plaintiff to testify to the value of the cattle killed. The evidence establishes that on the evening of January 8, 1914, the five head of steers in question were in the pasture of plaintiff, which was inclosed on one side by the right of way fence of defendant; that on the following morning their carcasses were found along the right of way, one about 90 feet from the pasture, another some 75 yards distant, beside the track, a third about 100 yards beyond the second, another 25 or 30 steps further on, and a fifth a quarter of a mile from the fourth. They had entered upon the right of way through or over the fence of defendant at a place where the posts had been burned off at the ground and were suspended, hanging to the wires: some of the staples being out and the wire sagging. Plaintiff testified that some of the posts of the right of way fence had been burned off, at the point where the cattle escaped, for more than a month. The roadmaster and section foreman of defendant testified

to an inspection of such fence two or three times a week for a long period previous to the killing of the cattle, and that their attention was not called to anything out of the ordinary or wrong with regard thereto. The roadmaster also testified to finding sand on the rails at the place where the carcasses were discovered, indicating, as he stated, that the engineer had stopped the train as quickly as possible.

The engineer testified that on the night in question, at the point where the cattle were killed, while running his train at the rate of 40 miles an hour, he saw a steer jump on the track immediately in front of the engine; that he applied the air, gave the engine sand, and blew the whistle, by which time he struck the animal, about which instant he saw another steer on the bridge ahead, and this one he also struck before the train could be stopped; that he saw no other cattle; that, after discovering such animals, he used every possible effort to stop the train in time to prevent striking them; that the train could have been stopped in about 1,500 feet. The fireman testified to substantially the same state of facts. The plaintiff testified that he had been engaged in the cattle business practically all his life, and had bought and sold them in large numbers, and at the time of the occurrences in question owned some 1,200 or 1,500 head; that two of the steers killed weighed about 1,150 pounds, and three about 1,000 pounds each; that they had been fed on cake since October 1st; that he received a market report every day; and that in his judgment they were worth 7½ cents per pound.

Defendant contends that the proof is insufficient to sustain the verdict and judgment, for the reason that there is no evidence as to the defective condition of the right of way fence prior to the killing of the cattle, and

it is not shown that such condition was known to defendant, or had existed for such length of time that defendant might by the exercise of ordinary care have discovered the same. It will be noted that there was testimony to the effect that the posts, at the particular place where the cattle escaped from the pasture through the fence, had been burned off for more than a month, and defendant's roadmaster and section foreman, according to their statements, passed the point for the purpose of inspection two or three times a week. An unbroken line of decisions by this court has established the doctrine that, where there is any evidence reasonably tending to support a verdict, the judgment based thereon will not be disturbed on appeal. In *C., R. I. & P. Ry. Co. v. Westheimer & Daube,* 44 Okla. 287, 144 Pac. 356, it is held:

"It is the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a lawful fence along its right of way, 'except at public highways and station grounds.' Sections 1435 and 1438, Rev. Laws 1910. Where stock goes upon the right of way and is injured on account of the failure of the company to maintain such lawful fence, it is liable for stock killed or injured by its trains, regardless of negligence in the running or management thereof."

It is also urged by defendant that there was no competent evidence offered of the market value of the cattle killed, inasmuch as a proper foundation was not laid for the introduction of the testimony of plaintiff, the only witness in this respect. We do not regard this position as tenable. Plaintiff had been engaged for years in the business of buying, feeding, and selling cattle, was at the time the owner of a large number, and in daily receipt of the market reports. If evidence in this regard were requisite, the showing made was certainly sufficient to qualify him

to testify as to the local market value of his own cattle. Speaking to this point, in *Midland Valley R. Co. v. Larson,* 41 Okla. 360, 138 Pac. 173, this court held:

"Ordinarily the owner of chattels is qualified, by reason of that relationship, to give his estimate of their value, and where he qualified as knowing the market value of such chattels as hogs, sheep, cattle, and horses, it is not error to permit him to so testify."

Defendant further contends in its brief that:

"There is absolutely no testimony in the record which shows, or even tends to show, that the engineer in charge of the train which struck said cattle did not use, not only ordinary care, but every possible means at his command, to prevent striking the cattle after their presence was discovered upon the track."

Such contention is not sustained by the record. The testimony of the engineer establishes the fact that the train was running on a straight track for a mile before reaching the point where the first animal was struck, and that the electric headlight illuminated the right of way some 15 or 20 feet on either side of the track for a distance of about half a mile. The distance between the first and last of the carcasses found upon the right of way was approximately half a mile. Five head of cattle were killed, but the trainmen testified to seeing but two. The engineer stated that his train could have been stopped, within about 1,500 feet. In the light of this testimony, and the physical facts, the jury may well have concluded that the engineer had failed to use ordinary care to avoid killing the cattle after discovering their presence upon the right of way or track. *C., R. I. & P. Ry. Co. v. Westheimer & Daube, supra.*

The questions of negligence on the part of defendant in the maintenance of a lawful fence at the place where the cattle entered upon its right of way, and in the operation and control of the train which struck and killed such cattle, were matters of fact properly determinable by a jury. There was a general verdict for plaintiff, which, as we have seen, is reasonably sustained by the evidence on both grounds. The instructions fairly state the law applicable to the case.

The judgment should be affirmed.

By the Court: It is so ordered.