## DAVIS, Director Gen. of R. R., v. CONNELLY RANCH CO.

No. 13309—Opinion Filed Sept. 30, 1924.

### 1. Railroads—Liability for Killing Stock—Failure to Fence Right of Way.

It is the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a lawful fence along its right of way except at public highways and station grounds. Sections 1435 and 1438, Rev. Laws 1910. Where stock goes upon the right of way and is injured on account of the failure of the company to maintain such lawful fence, it is liable for stock killed or injured by its trains regardless of negligence in the running or management thereof.

### 2. Same—Duty to Keep Gates at Crossings in Repair.

Where there are gates or bars at private or farm crossings in the right of way fence, they constitute a part of the fence and are included in the provision of the statute that it is the duty of the person or corporation operating a railroad to keep and maintain a sufficient fence, of which the gates or bars constitute a part, and if the gates or bars are left open, and the fence is permitted to go to decay and fall down, it is immaterial whether the stock that were killed entered the right of way and got on the tracks through the gate or bars or through the fence where it was down. It is just as much the duty of the railroad company to keep the gate or bars in repair as it is to keep the fence in repair, and it is the further duty of the railroad company to use all reasonable care in keeping the gate or bars closed.

### 3. Same—Defective Fence and Gates.

Where, as in this case, the evidence shows

that the fence was down on each side of the gate in several places and that the gate was permitted to stand open most of the time, it is immaterial whether the mules, that were killed in this case, got on the right of way and tracks of the railroad through the fence or through the gate, because in either event they were permitted to get on the right of way and tracks of the railroad through the failure of the railroad company to keep the fence and gates in proper repair.

### 4. Same—Negligence.

Where it appears that the owner of the land on each side of the right of way asks the railroad company to fix its fence, and to close up the gates, as he did not need them nor want the crossing, and offered to furnish the wire to repair the fence, it was negligence on the part of the railroad company not to repair its fence and close up the gate as requested by the owner of the land.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Washington County; J. R. Charlton, Judge.

Action by G. W. Connelly against James C. Davis, Director General of Railroads, as agent under section 206 of the Transporation Act, 1920. Judgment for plaintiff, and defendant appeals. Affirmed.

This is a suit by the plaintiff, G. W. Connelly, to recover damages against the defendant, James C. Davis, Director General of Railroads, for the killing of three mules. The evidence shows that on the night of December 24, 1918, a train operated by the defendant, Director General of R. R., struck three mules that had gotten upon the right of way and killed two of them outright and injured the other one so badly that it had to be killed. The principal contention in the case is, that the railroad failed to fence and maintain a fence, as required by law, to keep stock from wandering on to their railroad. There was a private crossing provided for, when the right of way was fenced, at the place where the mules were killed, and a gate on each side of the track. The fact is admitted that this right of way fence had not been kept up by the defendant railroad, but was down in several places on each side of the gate. The section foreman testified that the fence was down, "clear down," as he put it, for about 800 feet north of the gate, and was also down in places south of the gate. The gate had not been kept in repair and was used by the public generally, and at the time of this accident was being used by a construction crew that was at work on a branch that

the defendant railroad was building to Pawhuska; and the evidence is undisputed that the gate was open practically all the time. The section foreman testified that he closed it when he found it open, but when asked the question: "What was the use of closing it when the fence was down?" as he described it, he said it was a rule of the railroad, and his instructions were to close gates when he found them open, and it was on account of this rule that he closed the gate. G. W. Connelly owned the land on each side of the railroad at this particular place, and he testified that he bought the place in 1917, and that soon after he bought the place there was a cow killed by the railroad at this particular place where the mules were killed, and that he asked parties who came to see him about settling for the cow, to put up the fence and to close the gates; that he did not need or want the gates, and to close them up and fix their fences, so his stock could not get on the right of way. Just who this particular person was, or what his connection with the railroad was, is not shown, but the ranch foreman, Mr. Earnhart, testified that soon after this cow was killed he talked to Mr. Foster, the section foreman, and asked him to fix the fence and to close the gates as they did not need them, and if he would close the gates and fix up the fence that he would furnish him wire to fix the fence, as he had some wire that he was not using. Foster agreed to fix the fence and close the gate but never did so. Mr. Connelly had a pasture on the west side of the railroad, in which these mules were kept, and by reason of the fence being down and the gate opened, the mules strayed on to the railroad and were killed. There is very little controversy in the testimony as to the condition of the fence and the gates. All of the witnesses testified that the fence was down in places, and that the gate was nearly always open. It would seem from the evidence that the gate did not turn stock even when it was shut, as the bottom hinge was broken off, and when they attempted to close the gate they dragged it around and it would lie down so close to the ground that stock could pass over it. So the record shows that the fence and the gate were badly out of repair, and there was nothing to hinder stock from passing on to the right of way. The case was tried to the court and a jury, and the jury returned a verdict for the plaintiff, Connelly, and after unsuccessful motion for a new trial, defendant appealed the case to this court.

Cottingham, McInnis & Green and M. M. Gibbens, for plaintiff in error.

George S. Hill and H. H. Montgomery, for defendant in error.

Opinion by MAXEY, C. This is one of that class of cases that has been before the courts of the country ever since we have had railroads. The different states have legislated on the subject of fencing the right of way, but these statutes vary as to just how the fence should be constructed and maintained. Oklahoma has also legislated on the subject, and we find that section 5536, Compiled Statutes of 1921, is as follows:

"It shall be the duty of every person or corporation owning and operating any railroad in the state of Oklahoma, to fence its road, except at public highways and station grounds, with a good and lawful fence."

Section 5537 provides what a good and lawful fence is, and section 5539 fixes the liability of the railroad for a failure to build and maintain such lawful fence. The plaintiff in error, the Director General of Railroads, in his brief has assigned 9 errors, but in argument he has grouped them under three propositions:

"(1) It is not sufficient for the plaintiff to merely establish that the fence was defective. Under the statute, in order to make a case of liability against the defendant, he must go still further and affirmatively show that his damages were occasioned by the want of a proper fence. In other words, the plaintiff must prove not only that the fence was defective, but that the mules came through such defective fence.

"(2) The evidence reflects that the mules entered the right of way through a private crossing gate. Before the defendant could be charged with negligence of permitting the animals to go through the gate, it was incumbent upon the plaintiff to establish that the gate was open prior to the occurrence of the accident a sufficient length of time to enable the employes of the railroad company to discover that it was open and close it. The plaintiff offered no evidence to show that the gate was open the day previous to the accident on the other hand, the evidence of the defendant reflected that employes of the railroad closed the gate late in the evening prior to the night when the mules were struck and killed. In view of this evidence, the court should have instructed a verdict in favor of the defendant.

"(3) Errors of law occurring at the trial in admitting evidence offered by plaintiff over the objection of defendant; in refusing instructions requested by defendant; and in giving instructions which were unsupported by the evidence and contrary to law."

The first proposition is to the effect that the plaintiff must prove not only that the fence was defective, but that the mules came through such defective fence. Counsel have devoted a large part of their argument in an attempt to show a distinction between stock passing through the fence where it was down and passing through the open gate, and cite quite a number of authorities from other states to sustain that position. They do not cite the statutes of the different states, but cite authorities, and we do not, therefore, know whether they have a similar statute to ours, or an entirely different statute. This court has had a number of these stock-killing cases before it, and we think that the rule in such cases is sufficiently established by our own court, and that it is not necessary to go outside of our own state.

We cannot see any difference between the stock passing through the fence where it is down on to the right of way or going through the open gate in that same fence and getting onto the right of way. In our judgment, it is all a part of the same structure that is intended to enclose the right of way. It seems to us that the railroad company was grossly negligent in permitting its fence to go to decay and tumble down, and permitting this gate to get out of repair and to remain open, as the evidence shows it did. It was bound to know that stock would wander around, and that they were liable to get on the track at any time. Mr. Connelly, the owner of the land on each side, told it something like a year before this accident that he did not want the crossing, and he did not want the gates, but he wanted it to fix up its fence so it would keep his stock from wandering on the right of way, and then close up the gates. His foreman also asked it to close up the gates and fix the fence and offered to furnish the wire to fix the fence with. Yet it let it remain in that unsafe condition for nearly a year before this accident occurred. The suit, as originally brought, charged negligence in not keeping and maintaining the proper fence along its right of way, and also charged it with negligence in operating its train, but on the trial, they abandoned the question of negligence in the operation of the train and tried the case on the sole theory that the defendant railroad was negligent in not building and maintaining a good and lawful fence along its right of way, by reason of which the mules in question strayed on to the right of way and were killed by defendant's train. We do not think it makes any difference whether they went on the right of way through the gate or through the fence that was down. The fact remains that they did get on the right of way and were killed, and we think it was the negli-

gence of the railroad company in not keeping up its fence, as the law required, that these mules were killed.

This court in the case of Chicago, R. I. & P. Ry. Co. v. Westheimer & Daube, 44 Okla. 287, 144 Pac. 356, had one of this class of cases before it. The first paragraph of the syllabus of this case reads as follows:

"Railroads—Fences—Failure to Maintain —Injury to Stock—Liability. It is the duty of every person or corporation owning or operating a railroad in Oklahoma to build and maintain a lawful fence along its right of way 'except at public highways and station grounds.' Section 1435 and 1438, Rev. Laws 1910. Where stock goes upon the right of way and is injured on account of the failure of the company to maintain such lawful fence, it is liable for stock killed or injured by its trains regardless of negligence in the running or management thereof."

The case of St Louis & S. F. R Co. v. Smith, 41 Okla. 163, 137 Pac. 714, is a stock-killing case, and we quote the first and second paragraphs of the syllabus:

"1. Railroads—Action for Killing Cattle —Duty to Fence—Question for Jury. By statute (section 1389, Comp. Laws, 1909, section 1435, Rev. Laws 1910) it is made the duty of railroad companies to fence their roads, except at public highways and station grounds, with a good and lawful fence.

"2 Same. Whether a certain place constitutes a part of the station grounds, or a public highway, where the railroad company is by statute exempt from maintaining a fence, is a question of fact for the jury trying the case."

The same rule has been announced by this court in a great number of cases, among which are the cases of St. Louis, I. M. & S. Ry. Co. v. Dawson, 57 Okla. 655, 157 Pac. 751; Missouri, K. & T. Ry. Co. v. Minor, 75 Okla. 10, 181 Pac. 142; Missouri, K. & T. Ry. Co. v. Bandy, 75 Okla. 57, 181 Pac. 313; Missouri Pac. Ry. Co. v. Johnson, 101 Okla. 4, 222 Pac. 234.

In addition to the above, and under the record of this case, we call attention to the St. Louis & S. F. R. Ry. Co. v. Williams, 31 Okla. 450, 122 Pac. 152. The opinion in this case was written by Judge Kane, and is a very carefully prepared opinion, and on the question of gates being a part of the fence, we call attention to the second and third paragraphs of the syllabus:

"2. Same—Private Crossings—Gates. In the absence of statute or agreement to the contrary, a railroad company must exercise reasonable care to see that the gates or bars at private or farm crossings are kept closed; the duty being included in that of maintaining a sufficient fence of which the gates or bars constitute a part. And, if the gates or bars are properly constructed and are left open by the landowner or by strangers without the knowledge of the company, it will not ordinarily be liable, the company being entitled to a reasonable time to discover that they are open and to close them; but the company will be liable if they have remained open for such length of time that it should in the exercise of reasonable care have discovered their condition.

"3. Negligence — Question for Jury. Where from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions respecting the question of negligence, such questions are properly for the jury."

The second proposition goes to the sufficiency of the evidence to warrant a judgment in favor of the plaintiff upon the theory that the gate and fence were open or defective. Counsel have quoted excerpts from the testimony in an attempt to show that there was a lack of evidence. We have read the entire testimony in this case, and we do not think the testimony, taken altogether, comes any way near sustaining this proposition. It is very little help to the court to have counsel quote excerpts from the testimony and pick out that part that is most favorable to their theory of the case, and we have found it necessary to read the testimony in most cases and have done so in this case, and will say that we think under the rule laid down in this state, the evidence is amply sufficient to sustain the judgment of the court. It is insisted under this head, that inasmuch as Mr. Foster, the section foreman, closed the gate at 4:30 p. m. on the day previous to the night the accident occurred this is sufficient to excuse the railroad from negligence. Mr. Foster, when asked the question why he closed the gate when the fence was down on both sides, said it was because his instructions were to always close the gates along the right of way when they were open. It is clear that he knew that the dragging of that old gate around and fixing it, as he said, the best he could, would not keep the stock from going on the right of way We think counsel for defendant have devoted entirely too much time to that old gate.

Proposition 3 goes to the alleged error of the trial court in admitting evidence offered by plaintiff and objected to by defendant, and in refusing requested instructions, and giving instructions which were unsupported by the evidence. The alleged error in admitting improper evidence refers to the testimony of Mr. Connelly and Mr. Earn-

hart, his ranch foreman, detailing conversation they had with the section foreman and other employes of the railroad in regard to fixing the fence and closing the gates. We do not think there was any error in the admission of this testimony, under the limitations fixed by the court, as to what effect it should have. It is further objected, that the court erred in permitting testimony in regard to killing a cow belonging to plaintiff something like a year before the mules were killed. This testimony in regard to there being a cow killed got into the record by witness Connelly and Earnhart mentioning the circumstances of the cow getting killed there, in order to fix the date of the conversation they had with the employe of the railroad company about fixing the fence and closing up the gates, and was not intended to have any other effect. We think the case fairly tried, and that the instructions asked by defendant were properly refused, and that the instructions given by the court, taken altogether, presented the law of the case, and that the jury was fairly instructed and their verdict is amply sustained by the testimony, and under the rule of this court, that the jury is the sole judge of the facts, and that where there is any testimony to sustain their verdict, it will not be disturbed on appeal, the judgment of the trial court should be affirmed, and we so recommend.

By the Court: It is so ordered.