## ATCHISON, T. & S. F. RY. CO. v. HENDERSON.

No. 703. Opinion Filed November 16, 1910.

**RAILROADS—Killing Stock on Track—Care Required—Evidence—Sufficiency.** In a stock killing case against a railway company. when the stock is injured under such circumstances as to cast upon the company the duty of ordinary care to prevent the injury, if the uncontradicted evidence shows that this duty has been fully performed, it is error to render judgment for the loss thus incurred against the defendant.

(Syllabus by the Court.)

*Error from Alfalfa County Court; F. M. Gustin, Judge.*

Action by A. J. Henderson against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*Cottingham & Bledsoe* and *George M. Green*, for plaintiff in error.

*Sydney R. Roth,* for defendant in error.

KANE, J. This was an action commenced by the defendant in error, plaintiff below, against the plaintiff in error, defendant below, to recover damages for certain hogs belonging to the plaintiff that strayed upon the tracks of defendant and were killed by one of its trains. It was commenced before a justice of the peace, where judgment was rendered for the plaintiff, from which judgment the defendant appealed to the county court. In the county court a jury was waived, and upon hearing the evidence, the court, upon request of the defendant, made findings of fact and conclusions of law, wherein it found, "That the engineer was negligent in not stopping his train when he saw the hogs on the tracks, and when his appliances for stopping the train were in good working order, and he could set the brakes immediately, the hogs being a distance of two telegraph poles ahead of the engine and running from it." Whereupon judgment was rendered for the plaintiff, to reverse which this proceeding in error was commenced.

We think the judgment of the court below ought to be reversed. Even treating this case as belonging to the same class as *A., T. & S. F. Ry. Co. v. Davis,* 26 Okla. 359, 109 Pac. 551, where the animals injured strayed upon the track of the defendant under such circumstances as to require the railway company to use ordinary care to prevent injury, the uncontradicted evidence shows this duty to have been fully performed.

The plaintiff offered himself as a witness, and testified, in substance, that the hogs were killed on the 15th day of September, 1907, upon the right of way, which ran through his land; that

he was not present and did not see the accident; that one of the hogs was of the value of $8, and the other two of $7 each; that he did not permit the hogs to run at large; that they were left in a pasture of two acres of alfalfa and corn; that a Page wire fence surrounded it. This enclosure was four feet from the railroad track and was not part of the right of way fence; the right of way fence was a four-foot wire fence. J. T. Sanborn, the next witness for the plaintiff, testified that he lived across the road from Mr. Henderson; that, on the day of the accident, he heard the train whistle as it approached the place where the hogs were run over, and saw them running along the track in front of the train, and they were run over and knocked off the track. He was about 200 yards from the place of the accident, and went to the scene and found three dead hogs. On cross-examination he testified that it was an ordinary freight train and running about 20 miles an hour. He was asked:

"Q. Now, the first you knew of the matter is when you heard the train whistle? A. Yes, sir. Q. And you looked out and saw the hogs on the track? A. Yes, sir. Q: How long was it from the time you heard the train until you looked out and saw the hogs on the track? A. Just long enough to get out of the house. I do not know just how long it took me. Q. Well, then, how soon were the hogs run over or knocked off from the track? A. Well, they didn't run very far till they were knocked off. Q. You didn't see the hogs prior to the time that they were on the track? A. No, sir."

He was asked by the court:

"Q. Mr. Sanborn, when you first saw the hogs, how far were they ahead of the train? A. Why, I don't suppose they were over eight or ten rods."

At the close of the plaintiff's evidence the defendant demurred thereto, upon the ground and for the reason that the evidence was not sufficient to prove a cause of action in favor of the plaintiff and against the defendant, which demurrer was by the court overruled, and the defendant excepted. The defendant introduced Richard Barrier, who was the engineer in charge

of the train. He testified in substance that he had nine cars in his train, loaded; that they were supplied with air brakes and in good working order; that the train was running at the rate of 35 to 40 miles an hour; that the track at the place of accident was a little down grade; that he was sitting on the seat box looking ahead when he saw the hogs go on the track; that they were not over two telephone poles ahead, and that he was keeping a lookout for stock. He testified further:

"Q. Now, what did you do when you first saw these hogs coming on the track? Why, I immediately grabbed the whistle and throwed the air in emergency and opened my cylinder cocks. Q. Now, when you say you grabbed the whistle, what do you mean, Mr. Barrier? A. Well, we have a whistle that we make an effort to scare stock with, sounding and making all the noise that we can. Q. Then you did sound the whistle on this occasion? A. Yes, sir. Q. Now, will you explain what you mean by putting the air into emergency? A. Well, there is two services or ways of handling the brakes; there is what we call service application, and then the emergency application, that means we throw the air on all at once. It gives us more braking power and works quicker and takes effect immediately. Q. Now, when you say you opened the cylinder cocks, what does this do? A. Why, that lets the steam escape from the cylinders. It would evidently scare anything that was on the track. Q. Scare fit off the track? A. Yes, sir. Q. Now, I will ask you to state whether or not you did all in your power and at your command to avoid striking these hogs? A. I did. Q. I will ask you to state whether or not it was possible for this train to have been stopped and the accident avoided? A. It would have been impossible, at the rate of speed we were running and the distance we had to stop."

There was absolutely no evidence tending to contradict the positive evidence of the engineer that he did all in his power to avoid striking the hogs, and none from which the court might infer the want of ordinary care on his part. *K. C. L. & S. K. Ry. Co. v. Bolson*, 36 Kan. 534, 14 Pac. 15. The engineer saw the hogs as they approached the track, and immediately sounded the whistle, applied the emergency brakes, and did everything he

could to stop his train. There is no evidence that the train did not slack in response to the engineer's efforts, or that it would have been possible to stop within the distance intervening between the hogs and the locomotive at the time they were discovered approaching the tracks. Courts cannot disregard the uncontradicted evidence of unimpeached witnesses, and it was error for the court below to do so. The judgment must therefore be reversed and the cause remanded, with directions to grant a new trial.

All the Justices concur.