## TERRY v. CREED.

No. 733. Opinion Filed May 9, 1911.

(115 Pac. 1022.)

**APPEAL AND ERROR—Review—Sufficiency of Evidence.** Where there is no evidence reasonably tending to establish a material issue submitted to the jury under the instructions of the court, which the jury must have found in favor of the prevailing party in order to have returned the verdict returned, the verdict will be set aside.

(Syllabus by the Court.

*Error from District Court, Bryan County; D. A. Richardson, Judge.*

Action by J. J. Terry against F. M. Creed. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

*T. O. Nelson* and *Humphrey & Strange,* for plaintiff in error. *Utterback & Hayes,* for defendant in error.

HAYES, J.   J. J. Terry, plaintiff in error, was plaintiff in the court below.   He brought this action in replevin against defendant in error, defendant below, to recover possession of a certain number of cattle.   He alleges in his petition as his cause of action and right to recover that on the 15th day of January, 1903, defendant executed and delivered to plaintiff a certain chattel mortgage, whereby defendant mortgaged to plaintiff the cattle in controversy to secure the payment of a promissory note for the sum of $500.   By the terms of the mortgage, legal title to the cattle was conveyed to plaintiff, with right of possession after condition broken.   Plaintiff alleged the maturity of the note and nonpayment thereof.   Defendant in his answer admits the execution and delivery of the note and mortgage, but pleads as a defense that the same were executed and delivered without a consideration and were procured by fraud. He alleges that plaintiff, for the purpose of defrauding him out of the cattle conveyed by the mortgage, falsely and fraudulently represented to him that he, plaintiff, had a right to deliver possession of certain improvements situated on a farm on Red river, known as the Lee place, and that plaintiff contracted with defendant that he, plaintiff, would guarantee to defendant the right of possession of said place, with the use, occupation, and rents of all the lands therein embraced for a period of five years next after the execution and delivery of the note and mortgage; that plaintiff has wholly failed to place defendant in possession of said place and has refused and still refuses to comply with his contract; and that he never intended to comply therewith, but at all times intended to cheat and defraud defendant out of the value of his cattle.   Plaintiff in his reply denied all the affirmative matters set up in the answer. Defendant failed to execute retainer bond, and the cattle were delivered, pending the action, to plaintiff.   There was a trial to a jury, resulting in a verdict and judgment in favor of defendant for the value of the cattle.

Several assignments of error are set out in plaintiff's brief for reversal of the cause, but of those presented by the record and

having sufficient merit to require consideration only that assignment need be considered which complains of the refusal of the court to set the verdict aside, upon the ground that it was not supported by the evidence.

Plaintiff is an intermarried citizen of the Choctaw Nation; and at the time of the transaction between him and defendant he owned the improvements and right of possession of the farm referred to in his petition, and was lawfully holding the same for the purpose of allotting thereon members of his family; but he at that time decided not to allot same but to take other lands. Defendant is not a citizen of any tribe of Indians, and was not entitled to take the land as an allotment, but he desired to obtain the allotment of it by some Indian, for whom he would procure the improvements and right of possession; and as a consideration for such would receive from such Indian a lease on the land. Pursuing these purposes, the note and mortgage were executed to plaintiff, and plaintiff executed a bill of sale, conveying the improvements on said land and the right of possession to one Silas Wood, a minor Indian, and delivered the bill of sale to defendant. On the 20th day of January, 1903, following the execution of the note and mortgage, defendant went into possession of a portion of the premises. Upon the 5th day of February succeeding, one Andy Johnson took possession of the remaining part of the premises. The evidence establishes that defendant had caused the bill of sale to be executed to said Silas Wood, without his or his guardian's consent; and that when defendant informed Silas Wood's guardian, Willie Baxter, of such fact, the guardian refused to have anything to do with the transaction or to contract with defendant in any way. Defendant thereupon, about the 11th day of February, took one Isaac Hampton, an Indian, to plaintiff, and requested plaintiff to execute to Hampton a new bill of sale, conveying the premises and improvements to Isaac Hampton, instead of Silas Wood. Plaintiff complied with his request, executed a new bill of sale to Hampton as of date January 15, 1903, the date of the former bill of sale, and the bill

of sale to Silas Wood, never having been delivered by defendant to Wood or his guardian, was destroyed in the presence of plaintiff. Later Hampton made a bill of sale of the place to another Indian by the name of Peyton in the presence of and with the consent of defendant. Peyton thereafter filed on the land, but Johnson, who went into possession of a portion of the land during the early part of February, acquired a bill of sale from the guardian of Silas Wood to the premises, and in September, 1904, filed a contest before the Interior Department against Peyton for the right to allot the land, and was successful in that contest; and the fact now is that the grantee of Silas Wood, to whom the first bill of sale was executed, has allotted and is now in possession of the premises, and that the person to whom defendant had the second bill of sale executed and his grantee have never been in possession and defendant has been unsuccessful in securing the land allotted to any Indian from whom he could procure a lease contract in consideration of the improvements and right of possession purchased by him from plaintiff.

The court in his instructions, which are not excepted to by either party, narrows the issue of fact to one question, and appears to have somewhat changed the issue as originally intended to be made by the pleadings, in that the jury was instructed as follows:

"The court will instruct you that there is but one issue for you to determine in this case, and that is whether or not the plaintiff, J. J. Terry, did any wilful and intentional act to prevent the defendant, Creed, from taking possession of the premises, or whether or not J. J. Terry, the plaintiff, caused Andy Johnson to go into possession of those premises or caused him to file upon same with intent to prevent the defendant, Creed, or Isaac Hampton from taking possession of the premises or the said Isaac Hampton from taking the same in allotment."

And the jury was further instructed:

"If you should find from the preponderance of the evidence in this case that J. J. Terry did wilfully and intentionally conspire with Andy Johnson, or any other person, for the purpose of preventing Isaac Hampton from filing on them, or taking

same in allotment, or for the purpose of keeping F. M. Creed out of possession, and that the same was successful, then, in that event, there would be failure of consideration for the note, and it would be your duty to find for the defendant. The court will instruct you that fraud is never presumed, and that the jury cannot presume fraud in any case; but fraud must be shown with reasonable certainty, and the burden rests upon the defendant to show that J. J. Terry wilfully and intentionally did such acts as did keep defendant out of possession, and ultimately kept Isaac Hampton from taking the premises in allotment, and the defendant must show this by a preponderance of the evidence in the case. The court will instruct you that the bare fact that Issac Hampton did not take the premises in allotment and that Andy Johnson received a bill of sale from Willie Baxter, and that Andy Johnson finally took the premises in allotment, would not justify you in finding for the defendant. You would have to find that plaintiff was a party to that transaction before you would be justified in finding for the defendant. In other words, whatever other persons did, whatever were the results of their acts, if the plaintiff was not a party to same and took no part in it and received no benefit therefrom, he would not be liable for those acts."

Under the foregoing instructions, in order for the jury to return a general verdict in favor of defendant, it was necessary for it to find that plaintiff did intentionally conspire with Andy Johnson or other persons for the purpose of preventing defendant or Hampton from going into possession, and that he did such acts as kept defendant out of possession and Hampton from taking the premises in allotment; but the jury was instructed without objection that it was not material that Hampton be in possession, in order to file upon the premises; that, if he was the owner of the improvements, he could file on the allotment, and it would make no difference what other unauthorized persons were on the place.

We have read the entire record carefully more than once in search of evidence reasonably tending to show that plaintiff was in any way a party to the transaction between Johnson and the guardian of Silas Wood, or that he in any way aided Johnson to

file upon the land, and thereby precluded Hampton or Peyton from filing upon it; but we have been unable to find any such evidence. All the evidence is to the effect that plaintiff had never seen and did not know Silas Wood or his guardian, Baxter. There is no evidence to establish that he received any benefit whatever from the transfer by Baxter to Johnson, or from the allotment of the land by Johnson. The evidence does disclose that within a few days after the execution of the first bill of sale plaintiff ascertained that defendant would have difficulty in getting possession of the premises; and on the 18th day of the same month wrote to him as follows:

"Mr. F. M. Creed—Dear Sir: I write to you in regard to our farm trade which, as I understand, will be in litigation and you may not get in possession of it until late, so, if it suits you to withdraw the trade, I would prefer to do so. Perhaps you had better come and see about it soon. Respectfully, J. J. Terry."

This letter plaintiff sent by Johnson to defendant, who was then upon the place and in possession of a part thereof. On the 3d day of February plaintiff wrote defendant the following letter:

"Mr. F. M. Creed—Dear Sir: I received your letter in regard to possession of farm and I herewith enclose notices to be served on them. If Frank or Waters will get off all right it wont hurt to serve notice on them or for Wafford, better serve notice by leaving a notice with him. Have it served by some one not interested and sworn to before a notary public, and then after ten days if he has or can't give bond, for the place he can be put off. You must rely for protection from the one in whose favor the deed was given. I can only put up for the cost of same. Andy Johnson and others (colored) has been to see me several times about the place and wants it bad, but I told them I had sold it to you and without your consent I could do nothing and would not try, and if you are so inclined to make any changes you can do so provided the deal makes me secured. They claim that you acted without authority from anyone; this I can't say, they have searched diligently for the party to whom the deed was given in favor of, but to no avail, so make sure of that part of the game and come and see me soon. Respectfully, J. J. Terry."

It is principally upon these letters defendant relies in his

brief as evidence that plaintiff procured Johnson to file upon the land and deprived defendant from successfully obtaining a filing by an Indian upon it from whom he could lease it. But we are unable to see how these letters can bear any such construction. Both of them, on the other hand, appear to indicate the very best of good faith on the part of plaintiff; for, having become informed that a controversy would likely arise over the possession of the land that would delay defendant, he offers by the first letter to permit defendant to withdraw from the trade, if he prefers to do so. In the second letter, he makes suggestions as to how he should best proceed in obtaining possession, and informs him that there were others who were desiring the land, and for him to make sure that the Indian to whom he had it conveyed was in existence; that those who were desiring the land informed him that he, defendant, had acted without authority. It was after this letter was written that defendant brought Hampton to plaintiff and informed plaintiff of his desire to have a new bill of sale, and his every request was complied with by plaintiff.

Appellate courts reluctantly disturb the verdicts of a jury that have been approved by the trial court, but it is the well-settled rule of this jurisdiction that if there is no evidence reasonably tending to establish a material issue submitted to the jury under the instructions of the court, which they must have found in favor of the prevailing party in order to return the verdict returned, the verdict will be set aside. *Howard et al. v. Farrar*, 28 Okla. 490, 114 Pac. 695; *Hassell v. Morgan et al.*, 27 Okla. 453, 112 Pac. 969; *Puls v. Casey*, 18 Okla. 142, 92 Pac. 388; *Meierholtz v. Territory*, 14 Okla. 359, 78 Pac. 90.

The judgment of the trial court is reversed and the cause remanded with instructions to grant a new trial.

TURNER, C. J., and DUNN and KANE, JJ., concur; WILLIAMS, J., not participating.