# E. M. BRASH CIGAR CO. v. WILSON *et al.*

### No. 1186.   Opinion Filed November 18, 1911.

### Rehearing Denied February 6, 1912.

### (121 Pac. 223.)

1. **SALES—Passing of Title.** Where goods belonging to the consignor are shipped on conditions that they are to be paid for on delivery to consignee, or to be returned to consignor, the title to same remains in consignor until the conditions are complied with.

2. **SAME—Attachment.** Where the owner of a consignment of goods ships same by express, upon the order of a firm acting as sales agent for the owner, under an agreement between the owner and such firm that all sales shall be for cash and all shipments C. O. D., or goods to be returned to the consignor, and such shipment is attached in the hands of the express company to satisfy a claim for salary and commissions against the sales agent firm by a party acting as its salesman, in an action of replevin between the owner and such subagent, in the absence of any evidence tending to show that such sales agent firm owned some interest in or title to such goods, and where the evidence shows that such salesman was not in the employ of the owner, did not look to the owner for his pay, but to the firm by whom he was employed, held, that the title to the goods remained in the consignor until they were paid for by consignee.

3. **APPEAL AND ERROR—Review—Evidence.** A verdict or judgment on the facts will not be disturbed by this court if there is any evidence reasonably tending to support same; but, on the other hand, if there is a total absence of any testimony upon which a judgment might reasonably be based, such judgment will be reversed.

(Syllabus by Harrison, C.)

*Error from Pottawatomie County Court;*
*E. D. Reasor, Judge.*

Action by the E. M. Brash Cigar Company against W. H. Wilson and others.  J. H. Barlow intervened.  Judgment for intervener, and plaintiff brings error.  Reversed and remanded.

*Burwell, Crockett & Johnson,* for plaintiff in error.

*Blakeney & Maxey,* for defendants in error.

Opinion by HARRISON, C.   In April, 1908, J. H. Barlow, one of the defendants herein, brought suit in the county court of Pottawatomie county against the Peerless Cigar Company of Toledo, Ohio, a corporation, for the sum of $572.46, for commissions and salary, alleged to be due him from said company as sales agent.   Simultaneous with the filing of the suit, he instituted attachment proceedings and attached ten separate shipments of cigars then in the possession of the Wells Fargo Express Company, at Shawnee, Okla., which cigars were alleged to be, and were attached as, property of the Peerless Cigar Company of Toledo, Ohio.   Thereafter, on application of J. H. Barlow, an order of sale was procured from the court, and said goods sold by the sheriff of Pottawatomie county and purchased by J. H. Barlow.   On May 16th J. H. Barlow obtained judgment against the Peerless Cigar Company of Toledo, Ohio, in the sum of $572.46.   On May 13th E. M. Brash Cigar Company of Lancaster, Pa., claiming that the Peerless Cigar Company of Lancaster, Pa., and the E. M. Brash Cigar Company of Lancaster, Pa., are one and the same company, filed suit in replevin against W. H. Wilson and E. A. Pierce, claiming the cigars in question as their own, and took possession of same.

To the petition of plaintiff, W. H. Wilson and E. A. Pierce each filed his separate answer, denying generally the allegations in the petition; Wilson answering further that he held the goods as bailee of J. H. Barlow; and E. A. Pierce answering that he had sold the goods, pursuant to order of court, as sheriff of Pottawatomie county.   Also, about this time, J. H. Barlow, claiming said cigars by virtue of his purchase at sheriff's sale, was allowed to intervene and set up his claim to the property.

Thereafter plaintiff, E. M. Brash Cigar Company, filed separate reply to answers of W. H. Wilson and E. A. Pierce and separate answer to J. H. Barlow's petition in intervention. Some amendatory pleadings were afterward filed, and the case finally went to trial on the question whether the cigars belonged to the E. M. Brash Cigar Company or to J. H. Barlow, by virtue of his purchase at sheriff's sale of the goods attached as the property

of the Peerless Cigar Company of Toledo, Ohio; J. H. Barlow, the intervener, contending that he was sales agent for the Peerless Cigar Company of Toledo, Ohio, and the goods in question were goods shipped to Shawnee by the Peerless Cigar Company. of Toledo, Ohio, in fulfillment of orders taken from retail merchants and sent in by him to said company, and that, said company being indebted to him for salary and commission, payment of which had been refused, he had attached their property to satisfy his claim against them.

On the other hand, the E. M. Brash Cigar Company contended that it was the owner of the cigars in question; that it had a contract or agreement with the Peerless Cigar Company of Toledo, Ohio, whereby said company should sell the E. M. Brash cigars, and that in all cases where the said Peerless Cigar Company of Ohio made sale of the cigars of the E. M. Brash Company, such sales should be made C. O. D., and that the title to the goods should, in all cases, remain in the E. M. Brash Company until they were paid for, and that the cigars in question were goods which had been sold by the Peerless Cigar Company of Ohio under this agreement, and that at the time the goods were attached at Shawnee they were then in the possession of the express company, had not been paid for by consignees, or delivered to consignees, and therefore belonged to the E. M. Brash Company.

On November 16, 1909, upon the issues thus joined, a jury having been impaneled, the cause went to trial. At the close of the testimony, counsel for plaintiff and intervener each moved the court for an instruction in his favor. The court instructed in favor of the intervener, and, a verdict being returned in accordance therewith, judgment was rendered in favor of intervener and against plaintiff for the return of the property in question, and, in the event return of the property could not be made, judgment for $479.77, and damages, in case the property should be returned, in the sum of $239.88. Motion for new trial was overruled, and cause brought here on appeal.

There is but one question here for determination. That is whether the court erred in instructing the jury to return a verdict in favor of the intervener, and this depends upon whether there was sufficient evidence to warrant the instruction.

It is contended by counsel for plaintiff in error and conceded by counsel for defendants in error that, where goods are consigned on a condition that they are to be paid for before delivery to the consignee, the title remains in the consignor until the conditions are complied with. This we believe to be the established rule of law, and we must therefore look to the evidence herein to ascertain whether this rule is applicable to the case at bar, or whether, under the evidence, the rights of the parties hereto are properly determined by this rule.

Mr. C. N. Davenport, agent for the Wells Fargo Express Company at Shawnee, testified that the goods in question, consisting of ten separate consignments or shipments, were received at his office; that before they were delivered to the consignees they were taken charge of by the officers under attachment proceedings; that they were shipped under instructions to collect on delivery; that the money was to be returned to the Peerless Cigar Company of Lancaster, Pa.; that his records showed that each of said shipments was from the Peerless Cigar Company at Lancaster, addressed to the consignee, C. O. D., amount of shipment; and testified in detail to date, amount, and name of consignee in each shipment. A copy of his record—that is, the record of the express office—was introduced in evidence by the intervener and made a part of the record here. This record shows, under the column "From Whom and Where," that each of the ten shipments in question came from the Peerless Cigar Company of Lancaster, Pa., giving the name of the consignee in each shipment and amount to be collected on each shipment. The witness, on cross-examination, stated that there was nothing in the information he had as to where the goods were loaded on for shipment, or whether loaded by the Peerless Cigar Company of Toledo, Ohio, or the Peerless Cigar Company of Lancaster, Pa.; nor had he any information as to where the Peerless

Cigar Company was located, only that he was to return the money collected on these shipments to the Peerless Cigar Company of Lancaster, Pa.

E. M. Brash testified by deposition that he was secretary and treasurer of the E. M. Brash Cigar Company of Lancaster, Pa.; that the E. M. Brash Cigar Company of Lancaster, Pa., and the Peerless Cigar Company of Lancaster, Pa., were one and the same; that the Peerless Cigar Company of Lancaster, Pa., was neither a corporation nor a copartnership, but merely a trade-name adopted by the E. M. Brash Cigar Company, of which he was secretary and treasurer; that the Peerless Cigar Company of Lancaster and the Peerless Cigar Company of Toledo were separate and distinct firms, neither having an interest in nor business connection with the other, further than that the Peerless Cigar Company of Toledo had been acting as sales agent on a commission for the E. M. Brash Cigar Company of Lancaster, which was the Peerless Cigar Company of Lancaster, and that as such sales agent the Toledo company had made sales of the cigars in question under an express agreement between the E. M. Brash Company and the Toledo Company that all goods sold by the Toledo Company for the E. M. Brash Company should be shipped C. O. D., money to be returned to the Peerless Cigar Company at Lancaster, Pa., or, in case the goods were not delivered, then the goods themselves to be returned to the Peerless Cigar Company at Lancaster, Pa.; that no credit was to be extended on goods of the E. M. Brash Cigar Company sold by the Toledo Company. Witness testified further that he had never had any dealings of any character with J. H. Barlow, the intervener, nor with W. H. Wilson, nor E. A. Pierce, the other defendants; that he was not indebted to them, or either of them, in any manner; that he had never parted with the title to the cigars in question, further than by delivering same to the Wells Fargo Express Company for shipment to consignees to whom sales had been made by their sales agents, the Peerless Cigar Company of Toledo, Ohio; that in each of the shipments in question and in controversy shipment had been made under the agree-

ment with the Toledo Company that the money should be collected and returned to the Lancaster Company, or, in case collection was not made, the goods to be returned to the Lancaster Company. This testimony of the express agent and of E. M. Brash was positive and uncontroverted.

On the other hand, the intervener, J. H. Barlow, testified as to the contract he had with the Peerless Cigar Company of Toledo, Ohio, and as to the services rendered under such contract, and as to the refusal of the Toledo Company to pay him the salary and commission due him for such services, yet he never in his testimony, even by intimation, denied the truth of the testimony of E. M. Brash. He admitted, however, that he knew the goods came from Lancaster. He introduced in evidence a copy of the contract between him and the Toledo Company, which copy shows to be a contract between J. H. Barlow and the Peerless Cigar Company of Toledo, Ohio. There is no testimony that the E. M. Brash Company, or any of its officers or stockholders, had any connection with or knowledge of the contract between Barlow and the Toledo Company. There were some letters introduced by intervener, for the purpose of disproving the statement of E. M. Brash that all of their goods sold by the Toledo Company should be sold for cash. These letters, however, do not tend to disprove that statement. On the other hand, the letters themselves, and especially the postscript to a letter from the Toledo Company to J. H. Barlow, dated 1—30—08, would rather indicate that the Peerless Cigar Company of Toledo was handling the cigars of other companies besides the E. M. Brash Company, and might justify the inference that some of these sales were made on terms. But all the evidence in reference to the shipments in question is positive and undenied that the money was either to be paid on delivery, or goods returned to the Peerless Cigar Company of Lancaster, Pa. There is no testimony which reasonably tends to show that the Toledo Company ever had title to the goods or any interest in same, further than the commissions due them from the Lancaster Company. The testimony is positive and undenied that

the E. M. Brash Cigar Company, at the beginning of this trans-
action, owned sole title to these goods, and there is no testimony
which reasonably tends to show that such title was parted with
at any stage in the transaction; nor is there any which reason-
ably tends to show that the E. M. Brash Cigar Company was
under any obligations to J. H. Barlow for salary and commis-
sion due him from the Toledo Company.

It is fair to assume, under the evidence in this case, that
if these goods had never been attached nor delivered to con-
signees, but, on failure of consignees to pay for same, had been
returned by the express company to the Peerless Cigar Company
of Lancaster, Pa., no one would presume to question their title;
and if the title to the goods was in the E. M. Brash Company at
the time the goods were attached, and the E. M. Brash Com-
pany was not indebted to J. H. Barlow, nor under any obliga-
tions to pay him the amount due him from the Toledo Company,
then such title is not affected by reason of the attachment pro-
ceedings.

We are well aware of the almost universal policy of appel-
late courts to not disturb the verdict or judgment on facts, if
there is any evidence reasonably tending to support same, and
fully concur in the rule, but, on the other hand, where there is a
total absence of any evidence upon which a judgment might rea-
sonably be based, the judgment should be reversed.

In the entire record of the case at bar, we fail to find any
testimony which reasonably tends to support the instructions of
the court below, or the verdict and judgment following.

The judgment, therefore, should be reversed, and cause re-
manded.

By the Court: It is so ordered.