## CHICAGO, R. I. & P. RY. CO. v. DYE.

No. 4695.   Opinion Filed June 29, 1915.

(150 Pac. 456.)

**RAILROADS—Injuries to Animals on Track—Evidence—Negligence.**
The defendant in error sued the railway company for negligently killing a heifer yearling. Upon an examination of the evidence, it is **held**, that there is a total failure to establish any negligence upon the part of the railway, and therefore there is nothing upon which the verdict can stand.

(Syllabus by Brewer, C.)

*Error from County Court, Atoka County;*
*Baxter Taylor, Judge.*

Action by T. M. Dye against the Chicago, Rock Island and Pacific Railway Company. Judgment for the plaintiff, and defendant brings error. Reversed.

*C. O. Blake, R. J. Roberts, W. H. Moore, J. G. Gamble,* and *K. W. Shartel,* for plaintiff in error.

*Linebaugh Bros. & Pinson,* for defendant in error.

Opinion by BREWER, C. This is a suit to recover for the alleged killing of a yearling. The plaintiff, at a trial of the cause on appeal to the county court, introduced evidence to show that the animal was found on the right-of-way injured in such a manner as to indicate that it had been struck by defendant company's train, at or near the edge of the switch limits in the village of Wardville, at a point about five telephone poles (one-sixth mile) from the depot.

Plaintiff was unable to produce any witness to the facts and circumstances as regards the manner of the injury. The defendant company introduced its engineer and fireman, they being the only two witnesses who were able to testify, from personal knowledge, as to the facts. The engineer, E. F. Stover, testified, among other things, as follows:

"Q. Do you remember striking the animal? A. Yes, sir. Q. Where? A. Just between the water tank and the cattle guard. Q. What rate were you going? A. Fifteen miles an hour. Q. When did you first discover the animal? A. It jumped on the track not more than 50 feet—between the water tank and the cattle guard. * * * Q. What rate were you running? A. About 15 miles an hour. Q. What, if anything, did you do in regard to preventing the accident? A. I used the service application of the brakes. Q. The air brakes? A. Yes, sir. Q. Any signal given? A. None, except the fireman hollered as the stock jumped on the track. * * * Q. What did you do? A. Used the service application. Q. Know whether the bell was ringing? A. Yes, sir. Q. How come that? A. We are accustomed to ringing it all through city limits. Q. Who attends to the ring-

ing of the bell? A. I do. Q. Was there any way that that train could have been stopped to have prevented striking the animal? A. No, sir; it was impossible. Q. Were the brakes working? A. Yes, sir. Q. With the kind of track you had and the speed you were going, what distance would it have required to stop that train with safety to the passengers? A. Not less than 150 feet. Q. After you ascertained the animal was going on the track, can you give us an idea of what space of time it was until you struck it? A. It couldn't have been more than two seconds. Q. Was there any way an engineer could have prevented that injury? A. Not a bit on earth. Q. You were keeping a lookout for things on the track. A. Yes, constantly."

The fireman testified as follows:

"Q. Where was the animal when you first saw it? A. It run out from behind the water tank. Q. How close was it to the engine when it jumped on? A. Forty or 50 feet. Q. How close is the water tank to the track? A. Ten feet. Q. It came out from behind that? A. Yes, sir. Q. What did you do when you saw it coming? A. Hollered at the engineer that the cow was coming across the track. Q. How long was it then until the animal was struck? A. It struck right now. Q. Are you familiar with the stopping of trains? A. Yes, sir. Q. Was there any possible way by which that train could have been stopped to keep it from striking that animal? A. No, sir; there was not. Q. Do you remember whether the bell was ringing? A. I am pretty sure it was, but I couldn't say. Q. About how fast was the train running? A. About 15 miles."

The evidence thus given by the trainmen was not contradicted, nor was either of said witnesses impeached. It is admitted here by defendant in error that a recovery in this case must be based upon the negligence of the railway company.

In *A., T. & S. F. Ry. Co. v. Henderson*, 27 Okla. 560, 563, 112 Pac. 986, 987, a similar case to this, appears the following:

" 'Q. I will ask you to state whether or not it was possible for this train to have been stopped and the accident avoided? A. It would have been impossible, at the rate of speed we were running and the distance we had to stop.' There was absolutely no evidence tending to contradict the positive evidence of the engineer that he did all in his power to avoid striking the hogs, and none from which the court might infer the want of ordinary care on his part * * * There is no evidence that the train did not slack in response to the engineer's efforts, or that it would have been possible to stop within the distance intervening between the hogs and the locomotive at the time they were discovered approaching the train. Courts cannot disregard the uncontradicted evidence of unimpeached witnesses, and it was error for the court below to do so."

In *St. L. & S. F. R. Co. v. Webb*, 36 Okla. 235, 128 Pac. 252, it is held:

"In an action for damages caused by alleged negligence in the killing of stock by a railroad company, where the testimony of the engineer and fireman is positive that the alarm was sounded, emergency brakes applied as soon as the stock was discovered, and everything done which was possible to do to stop the train and avoid the killing, and such testimony is not denied, and there is no testimony offered to show negligence, the court should instruct for a verdict in favor of defendant."

In the case of *St. L. & S. F. R. Co. v. Higgs*, 42 Okla. 171, 141 Pac. 10, the court said:

"In this case the undisputed testimony shows that the engineer was running his train at a speed of 25 miles hn hour; that, when he first saw the hog, it was about 25 feet ahead of the engine coming onto the track; that he

immediately applied the air and dropped sand, stopping his train within eight or ten seconds. This evidence is undisputed, and therefore comes within the case of *A., T. & S. F. Ry. Co. v. Henderson*, 27 Okla. 560, 112 Pac. 986, wherein it is said: 'In a stock-killing case against the railway ocmpany, when the stock is injured under such circumstances as to cast upon the company the duty of ordinary care to prevent the injury, if uncontradicted evidence shows that this duty has been fully performed, it is error to render judgment for the loss thus incurred against the defendant.' *K. C., L. & S. K. Ry. Co. v. Bolson*, 36 Kan. 534, 14 Pac. 5."

We have read every word of the evidence in this case, and in our judgment it is not only lacking in any positive evidence of negligence upon the part of the company, but no reasonable inference or deduction of the negligence can be made from the facts proven in the case. The case, resting on negligence, must be proven. If not proven, there is no case; and a recovery cannot be sustained. Nor does this case come within the rule announced in *St. L. & S. F. R. Co. v. Smith*, 36 Okla. 28, 127 Pac. 479, and *Ft. Smith & W. Ry. Co. v. Benson*, 26 Okla. 246, 109 Pac. 77, which cases were based upon *M., K. & T. Ry. Co. v. Ward*, 1 Ind. T. 670, 43 S. W. 954.

The cause should be reversed.

By the Court: It is so ordered.