MATTHEW J. KANE, CHIEF JUSTICE.
J. F. SHARP, VICE CHIEF JUSTICE.
JOHN B. TURNER,
SUMMERS HARDY, } JUSTICES.
G. A. BROWN,

## ST. L. & S. F. R. CO. v. WAGGONER *et al.*

No. 5368. Opinion Filed October 19, 1915.

(152 Pac. 448.)

CARRIERS—Shipment of Stock—Negligence—Evidence—Direction of Verdict. In an action by a shipper against a carrier for damages resulting from the negligent handling of stock, when the evidence fails to show any negligence on the part of the carrier, **held**, error for the trial court to refuse a peremptory instruction to the jury to return a verdict for the defendant.

(Syllabus by Galbraith, C.)

*Error from County Court, Hughes County;*
*J. Ross Bailey, Judge.*

Action by G. W. Waggoner and another against the St. Louis & San Francisco Railroad Company. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Crump & Skinner,* for defendants in error.

Opinion by GALBRAITH, C.   This is an appeal from the judgment of the trial court, rendered upon the verdict of a jury in the sum of $285, against the railroad company for negligence in the handling of a shipment of cattle from Wetumka, Okla., to Kansas City, Mo.   There is little, if any, dispute as to the facts.   The defendants in error delivered to the plaintiff in error 91 head of cattle at its station at Wetumka, for shipment to Kansas City, at 9:30 p. m. on the 13th day of November, 1911. The cattle filled three cars and were moved forward to Sapulpa, arriving there at 7:30 a. m. on the 14th, and were unloaded from the cars and placed in the company's stock pens, and fed and watered and retained there until near 12 o'clock the night of the 14th.   They were reloaded and went forward on the regular stock train, leaving Sapulpa a few minutes after midnight on the 14th. The stock was moved forward to Kansas City on schedule time, arriving there on the morning of the 16th of November, in time for the morning market of that day. The railroad had two schedules for the handling of stock. Where the shipment included ten or more cars, the stock was moved by special train, and would go from Wetumka to Kansas City in less than 28 hours.   The stock moving on this schedule would not have to be unloaded and fed and watered *en route* to comply with the federal regula-

tions prohibiting stock from being held in the cars more than 28 hours without feed and water, while shipments of less than ten cars were forwarded by regular schedule stock trains. This shipment, being a three-car lot, was forwarded by the latter schedule. The train on which they were shipped was due to leave Wetumka at 4:05 p. m. each day. This train was due at Sapulpa at 10 p. m., and if on time would make connection with the regular stock train leaving Sapulpa for Kansas City each night at 12:01. This train, however, leaves Sapulpa on its regular schedule, and is not held for trains from the south or west. Stock arriving at Sapulpa after 12:01 at night, and after the departure of this regular train, was of necessity held at Sapulpa until the train of the next night. The regular schedule time between Wetumka and Sapulpa was six hours and 25 minutes. The train on which this stock was shipped was four or five hours late on the 13th at Wetumka, and did not leave there until 9:30 p. m., and could not possibly have reached Sapulpa in time for the regular stock train for Kansas City leaving Sapulpa that night. The shippers were told by the agent at Wetumka that these cattle shipped by this train would arrive at Kansas City in time for the morning market of the third day. One of the shippers testified:

"Q. What day's market did you expect to sell on? A. Why I shipped with the expectation of selling on the 16th."

It is not denied that these cattle were delivered at Kansas City in time for the morning market of the third day after shipment, and that they were sold on the morning market of the 16th. There is no complaint of the handling of this stock by the railroad company after leaving Sapulpa, but it is contended that the delay of 17

hours there was unnecessary, and therefore negligence, and resulted in the shrinkage of the cattle of some 40 or 50 pounds each, and damages to the shipper in that amount. It is not claimed that the cattle were not properly cared for at Sapulpa. The railroad company caused them to be unloaded there and placed in its pens and given feed and water. There is some complaint that they were not given sufficient feed but the shippers remedied this by giving to them additional hay.

One assignment of error urged is the refusal of the court to direct the jury to return a verdict for the defendant. It is argued that, the action being based on the ground of negligence in the handling of the stock by the company, the burden was upon the plaintiffs to establish by evidence that the company was negligent in handling the shipment, and that injury thereby resulted to the shippers. The defendants in error, however, have not pointed to any particular evidence of negligence, other than the fact that the shipment was on the road 54 hours, which, it is contended, is an unreasonable time, and therefore evidence of negligence. We cannot agree with this argument. The shippers' action for damages was based upon negligence of the carrier. The law imposed upon the shippers the duty of proving by competent evidence some act of negligence by the carrier that resulted in the damages sued for. Our search of the record fails to disclose such evidence. It was the duty of counsel to point out this evidence in answer to the contention of the carrier that there was no negligence, and therefore no question to be submitted to the jury.

After a careful reading of the testimony we are unable to point to any evidence in the record that we can

say supports the claim of negligence on the part of the company in the handling of this shipment of stock. The delay of 17 hours at Sapulpa is explained by the evidence, from which it appears that such delay could not possibly justify a finding of negligence on account thereof, since these cattle moved forward by the first train departing from Sapulpa for Kansas City, after their arrival there. We are forced to the conclusion that in this record there is no evidence of negligence on the part of the company in handling this shipment, and therefore there was no question to submit to the jury in this cause, and the trial court should have sustained the motion of the plaintiff in error for an instructed verdict in its favor. *A., T. & S. F. R. Co. v. Henderson,* 27 Okla. 560, 112 Pac. 986; *E. M. Brash Cigar Co. v. Wilson,* 32 Okla. 153, 121 Pac. 223; *Terry v. Creed,* 28 Okla. 857, 115 Pac. 1022; *Hassell v. Morgan,* 27 Okla. 453, 112 Pac. 969.

We therefore recommend that the judgment appealed from be reversed, and the cause remanded for such further proceedings as may be proper.

By the Court: It is so ordered.