## MISSOURI, K. & T. RY. CO. v. RAINES.

No. 6468—Opinion Filed May 29, 1916.

(158 Pac. 936.)

**1. Railroads—Operation—Injuries to Animals—Care Required.**

The extent of the duty which a railway company owes to the owner of trespassing stock on its right of way crossings is that the engineer in charge of the train shall use ordinary care, after discovering the stock, to prevent injuring it.

**2. Same—Injuries to Stock—Actions—Direction of Verdict.**

Where the evidence of the engineer and fireman show that they did all that could have been done, immediately upon discovering the cow upon the track, to prevent injuring her, and such evidence is uncontroverted,

held, defendant's request for an instructed verdict should have been sustained.

(Syllabus by Clay, C.)

Error from County Court, Seminole County; A. S. Norvell, Judge.

Action by W. A. Raines against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded for new trial.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

Dan M. Pendleton, for defendant in error.

Opinion by CLAY, C. This action was originally brought in the justice court of Seminole county by W. A. Raines as plaintiff, and judgment was obtained against the Missouri, Kansas & Texas Railway Company, defendant, and appealed to the county court of said county, where judgment was finally rendered against the defendant for the sum of $60, from which judgment the defendant has appealed.

The parties will be referred to herein as plaintiff and defendant, as they appeared in the trial court. Plaintiff brought his suit for the alleged negligent maiming of his cow, in June, 1912, rendering it necessary to kill her. The cow was of the alleged value of $60, and the negligence alleged was that defendant's passenger train, running at a high and dangerous rate of speed at or near a certain railroad crossing about two miles southeast of the town of Konawa, in Seminole county, while approaching said crossing failed to give any signal by ringing a bell or sounding a steam whistle, or otherwise, although defendant had no gates, nor any flagman, at said crossing; that plaintiff's cow, without his fault, had strayed onto said crossing and had no warning of the approaching train; that no effort was made by defendant or its employees to prevent the killing or injuring of said cow.

Defendant's first specification of error is that the court should have instructed the jury to return a verdict for the defendant as requested. There is no dispute about the injury and death of the cow, or that her death resulted from injuries received when she was knocked off said crossing by defendant's passenger train. The undisputed evidence on the part of the engineer in charge of the defendant's train was that he did not discover the cow until he was within 20 feet of her; that his train was moving at the rate of 30 miles an hour; that he threw on the emergency brakes, and there was nothing else that he could have done; that his train was traveling northwest, and the cow approached and came upon the crossing from

the west side of the crossing, which rendered it impossible for him to see her on account of the boiler obstructing his view, his seat being upon the right side of the engine cab; that he could have brought his train to a stop in the condition the track was, with safety to the passengers, in 200 feet, in his judgment; that the fireman on the left side of the engine was engaged in putting in coal; that he sounded the whistle and the bell was rung by the air bell ringer for the crossing. The fireman corroborated the engineer, except that he did not see the cow until after she was struck. Both testified that the train was brought to a stop within about 200 feet.

As against the positive testimony of the engineer and fireman, plaintiff's witness Thompson was asked:

"Q. Did you hear any bells rung? A. No. Q. What did the train do? A. If the train made a stop, I never noticed it. Q. It just kept on running; never even stopped? A. No, sir."

Upon cross-examination he said:

"Q. Now, did you hear that signal from the engine for the crossing? A. It seems like I heard the train blow its whistle for the crossing, the best I recollect."

Robert Hoff, for the plaintiff, testified with reference to the signals as follows:

"Q. State whether or not any whistles were blown. A. No, sir. Q. Or bells rung? A. No, sir; not that I know of. Q. What became of the train? A. What do you mean? Q. Did it stop? A. No, sir. Q. State what was done with reference to slacking the train. A. If it did I didn't notice it."

On cross-examination he said:

"Q. Will you tell the jury that the engine did not whistle for that crossing? A. I didn't hear it. Q. You would have heard it, would you not? A. Yes, sir. Q. And you paid particular attention? A. No, sir; but I think I would have heard it."

Upon this state of the record, we are of opinion, the cow being conceded to be a trespasser by reason of the provisions of the herd law, that plaintiff was not entitled to a verdict, and the court should have instructed the jury for the defendant as requested.

There is in the record no attempt to contradict the testimony of the engineer and fireman that the cow was not discovered until the train was within 20 feet of her, that all in their power was done by these employees to avoid injuring the animal; that the train could not have stopped short of 200 feet with safety to the passengers, except the statement of Thompson that "If the train made a stop, I never noticed it," and

the statement of Hoff that the train did not stop, and, if it slackened, he did not notice it.

We have carefully examined the evidence and find no positive proof of negligence, and believe no reasonable inference of negligence can be drawn from the facts shown in the record. It is the law, well established by repeated decisions of this court, that the only duty resting upon defendant was to use ordinary care, after discovering the cow in a position of danger, to prevent injuring her. If this was done, then, in the absence of a duty violated, there can be no liability on the ground of negligence.

In the case of A., T. & S. F. R. Co. v. Davis & Young, 26 Okla. 359, 109 Pac. 551, Mr. Justice Williams, speaking for the court, said:

"The plaintiffs' mules having trespassed upon the railroad track of defendant without any actual fault on the part of said plaintiffs, after the presence and peril of the mules were known to it, the obligation rested upon it to exercise ordinary care in the management of its trains to prevent injury to such mules."

In the case of Gibson v. Iowa C. Ry. Co., 136 Iowa, 415, 113 N. W. 927, it was held that, in order to find a verdict for plaintiff on the second count of the petition, it was necessary for the jury not only to infer that the animal was killed by a passing train, of which there was no direct evidence, but also that the animal was in plain sight upon the track a sufficient length of time for the defendant's employees to have seen it if they were looking, and to have stopped their train; that they were in fact looking, which they were not required to do, and that they, in fact, saw the animal in sufficient length of time before they struck her to have, in the use of ordinary care and diligence, avoided the injury. This would be piling inference upon inference to an extent not permitted by law. In the case of Midland Valley Ry. Co. v. Bryant, 37 Okla. 206, 131 Pac. 678, Sharp, C., said:

"It is not the danger * * * the animals were in that constitutes the test of liability, but the knowledge of such danger and the consequent failure to exercise ordinary care to prevent the injury."

In the case of St. Louis & S. F. R. Co. v. Higgs, 42 Okla. 171, 141 Pac. 10, Rittenhouse, C., said:

"The only duty the railroad company owed the owner of said hog was to use ordinary care to avoid injuring it after the hog was seen on the right of way."

We deem it unnecessary to do more than cite the numerous cases from our own court which settle practically every contention

made by defendant in error in this case, except to say that if the defendant owed no duty to the owner of trespassing animals, other than to use ordinary care to prevent injury after it had discovered the animals, then it follows that a failure to ring the bell or blow the whistle would not render it liable. A., T. & S. F. Ry. Co. v. Henderson, 27 Okla. 56, 112 Pac. 986; A., T. & S. F. Ry. Co. v. Ward, 32 Okla. 187, 120 Pac. 982; St. Louis & S. F. R. Co. v. Brown, 32 Okla. 483, 122 Pac. 136; St. Louis & S. F. R. Co. v. Little, 34 Okla. 298, 125 Pac. 459; St. Louis & S. F. R. Co. v. Webb, 36 Okla. 235, 123 Pac. 252; St. Louis & S. F. R. Co. v. Hardesty, 36 Okla. 682, 129 Pac. 739; St. Louis & S. F. R. Co. v. Smith, 41 Okla. 314, 137 Pac. 357; M., K. & T. Ry. Co. v. Savage, 32 Okla. 376, 122 Pac. 656; M., K. & T. Ry. Co. v. Box, 48 Okla. 402, 150 Pac. 111; Midland V. R. Co. v. Bryant, 37 Okla. 206, 131 Pac. 678; C., R. I. & P. Ry. Co. v. Westheimer & Daube, 44 Okla. 287, 144 Pac. 356; C., R. I. & P. Ry. Co. v. Dye, 48 Okla. 465, 150 Pac. 456; F. S. & W. Ry. Co. v. Dixon, 51 Okla. 722, 152 Pac. 350. Under the statute, railway companies are not required to sound both the bell and whistle. Sec. 1430, Rev. Laws 1910; M., O. & G. Ry. Co. v. Parker, 50 Okla. 491, 151 Pac. 325.

The testimony of plaintiff's witnesses on that subject, being for the most part negative, is not materially in conflict with that of the engineer and fireman. We have examined the instructions complained of and do not think they are subject to the objections taken, and that they fairly presented the law.

We recommend that this cause be reversed, with instructions to the trial court to grant a new trial.

By the Court: It is so ordered.